IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.   12-2434

UNITED STATES OF AMERICA,
Appellee

v.

MICHAEL STRAUSBAUGH,
Appellant

APPEAL FROM A FINAL JUDGMENT OF CONVICTION AND
SENTENCE OF THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA AT 1:11-CR-0096
(CALDWELL, J.)

BRIEF OF APPELLEE

PETER J. SMITH
United States Attorney

STEPHEN R. CERUTTI II
Chief, Criminal Appeals
United States Attorney's Office
Middle District of Pennsylvania
Ronald Reagan Federal Building
Suite 220
228 Walnut Street
Harrisburg, Pennsylvania  17108
717-221-4482
Attorneys for Appellee

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF SUBJECT MATTER AND
    APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE
    AND THE STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATEMENT OF RELATED CASES AND PROCEEDINGS . . . . . . . 19

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

I.    Strausbaugh lacks standing to assert a violation of the
    Mutual Legal Assistance Treaty in effect between the
    United States and Canada, and in any event, no such
    violation occurred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

II.   The district court did not err in refusing to suppress
    evidence seized during the search of Strausbaugh's
    home, as it was based on probable cause assembled
    during a thorough pre-search investigation, was
    executed in good faith, and was not overbroad . . . . . . . . 26

    A.    Applicable law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    B.    Probable cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

        (1)    The lascivious nature of the Canada photo . . . 30

i

(2)  Inspector Corricelli's description of the
photograph . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

(3)  Strausbaugh's emails to Trumbley . . . . . . . . 36

C.  The scope of the search . . . . . . . . . . . . . . . . . . . . . . . 37

D.  The use of Internet Protocol addresses . . . . . . . . . . 41

III.  The district court did not err in allowing Strausbaugh's
admissions during a custodial interrogation into the record
as there was no evidence that he was improperly coerced . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

IV.  The district court did not err in denying Strausbaugh's
motion for judgment of acquittal as Strausbaugh's own
admissions combined with the uncontroverted evidence
established each element of every crime of which he was
committed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

A.  The nature of the photos . . . . . . . . . . . . . . . . . . . . . 50

B.  Evidence of an interstate nexus . . . . . . . . . . . . . . . 58

V.  Strausbaugh's 45-year sentence on his five child
pornography and sexual exploitation of a minor convictions
did not constitute cruel and unusual punishment . . . . . . 60

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

CERTIFICATE OF BAR MEMBERSHIP / VIRUS SCAN
CERTIFICATE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                              **PAGE**

*Berghuis v. Thompkins,*
    130 S. Ct. 2250 (2010) ................................................ 46

*Brinegar v. United States,*
    338 U.S. 160 (1949) ................................................. 27

*Coolidge v. New Hampshire,*
    403 U.S. 443 (1971) ................................................. 39

*Florida v. Harris,*
    133 S. Ct. 1050 (2013) ........................................... 26, 42

*Hill v. California,*
    401 U.S. 797 (1971) ................................................. 27

*Illinois v. Gates,*
    462 U.S. 213 (1983) .................................... 26, 27, 28, 39, 40

*In re Impounded Case (Law Firm),*
    840 F.2d 196 (3d Cir. 1988) ................................... 39

*Maryland v. Pringle,*
    540 U.S. 366 (2003) ........................................... 26, 42

*Miranda v. Arizona,*
    348 U.S. 436 (1979) ................................................. 46

*Moran v. Burbine,*
    475 U.S. 412 (1986) ................................................. 46

*New York v. P.J. Video,*
    475 U.S. 868 (1986) ................................................. 35

*Puckett v. United States,*
    556 U.S. 129 (2009) ........................................................ 2, 23

*Solem v. Helm,*
    463 U.S. 277 (1983) ......................................................... 63

*United States v. Arvizu,*
    543 U.S. 266 (2002) ......................................................... 41

*United States v. Christine,*
    687 F.2d 749 (3d Cir. 1982) ............................................ 39

*United States v. Cordero,*
    668 F.2d 32 (1st Cir.1981) .............................................. 24

*United States v. Davis,*
    407 F.3d 162 (3d Cir. 2005) ............................................ 23

*United States v. Dobson,*
    419 F.3d 231 (3d Cir. 2005) ............................................ 23

*United States v. Dost,*
    636 F. Supp.828 (S.D. Cal. 1986), *aff'd sub nom.* .. 30, 31, 33

*United States v. Galo,*
    239 F.3d 572 (3d Cir. 2001) ............................................ 59

*United States v. Hill,*
    459 F.3d 966 (9th Cir. 2006) ......................................... 31

*United States v. Hodge,*
    246 F.3d 301 (3d Cir. 2001) ............................................ 28

*United States v. Ivey,*
    612 F.3d 1160 (11th Cir. 2012) ....................................... 64

*United States v. Jones,*
    994 F.2d 1051 (3d Cir. 1993) ....................................... 28, 40

*United States v. Kane,*
    470 F.3d 1277 (8th Cir. 2006) ............................................ 63

*United States v. Kane,*
    639 F.3d 1121 (8th Cir. 2011) ............................................ 64

*United States v. Lee,*
    612 F.3d 170 (3d Cir. 2010) ............................................. 50

*United States v. Leon,*
    468 U.S. 897 (1984) ........................................................... 28

*United States v. Loy,*
    191 F.3d 360 (3d Cir. 1999) ............................................. 28

*United States v. MacEwen,*
    445 F.3d 237 (3d Cir. 2006) ............................................. 60

*United States v. Mike,*
    655 F.3d 167 (3d Cir. 2011) ........................................... 3, 50

*United States v. Miknevich,*
    638 F.3d 178 (3d Cir. 2011) ......................... 3, 27, 35, 63, 65

*United States v. Ninety-Two Thousand Four Hundred Twenty-*
    *Two Dollars And Fifty-Seven Cents,*
    307 F.3d 137 (3d Cir. 2002) ........................................ 27, 39

*United States v. Olano,*
    507 U.S. 725 (1993) ........................................................... 23

*United States v. Paton,*
    535 F.3d 829 (8th Cir. 2008) ............................................ 65

*United States v. Ramos,*
    685 F.3d 120 (2d Cir. 2012) ......................................... 59, 65

*United States v. Rivera,*
    546 F.3d 245 (2d Cir. 2008) ......................................... 31, 32

*United States v. Rodia,*
    194 F.3d 465 (3d Cir. 1999) ......................................... 59

*United States v. Rose,*
    538 F.3d 175 (3d Cir. 2008) ......................................... 2, 3, 38, 46

*United States v. Sarras,*
    575 F.3d 1191 (11th Cir. 2009) ......................................... 65

*United States v. Strausbaugh,*
    3d Cir. No. 12-2416 ......................................... 19

*United States v. Torres,*
    534 F.3d 207 (3d. Cir. 2008) ......................................... 2

*United States v. Villard,*
    885 F.2d 117 (3d Cir. 1989) ......................................... 31

*United States v. Wiegand,*
    812 F.2d 1239 (9th Cir. 1987) ......................................... 30, 31

*United States v. Williams,*
    3 F.3d 69 (3d Cir. 1993) ......................................... 28, 29

*United States v. Yusuf,*
    461 F.3d 374 (3d Cir. 2006) ......................................... 41, 42, 43

## FEDERAL STATUTES

18 U.S.C. § 2251 ......................................... 61, 62

18 U.S.C. § 2251(a) & (b) ................................. 4, 5, 12, 13

18 U.S.C. § 2251(c) ........................................... 64

18 U.S.C. § 2251(e) ........................................... 62

18 U.S.C. § 2252 ....................................... 4, 12, 62

18 U.S.C. § 2252(a)(2) & (b) ........................... 4, 5, 13, 61

18 U.S.C. § 2252A(a)(5)(b) ............................... 5, 13, 62

18 U.S.C. § 2252A(b)(2) ..................................... 62

18 U.S.C. § 2252(b)(1) ....................................... 62

18 U.S.C. § 2253 ....................................... 5, 13

18 U.S.C. § 3231 ............................................ 1

28 U.S.C. § 1291 ............................................ 1

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

The United States District Court for the Middle District of Pennsylvania had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

The district court entered its judgment in this criminal case on May 8, 2012. App. 5A. Strausbaugh filed his notice of appeal on May 15, 2012. App. 2A.

## STATEMENT OF THE ISSUES AND THE STANDARDS OF REVIEW

I.    **Whether Strausbaugh has standing to assert a violation of the Mutual Legal Assistance Treaty in effect between the United States and Canada.**

Since Strausbaugh failed to raise this claim as an issue before the district court, this Court's review of the issue is for plain error. *Puckett v. United States*, 556 U.S. 129 (2009).

II.    **Whether the district court erred in failing to suppress physical evidence obtained during the execution of a search warrant at Strausbaugh's home.**

This Court exercises plenary review over the district court's legal conclusions, and clear error review of its factual findings. *United States v. Torres*, 534 F.3d 207, 209 (3d. Cir. 2008). Where a defendant fails to raise a suppression issue before the district court, however, that issue is deemed waived absent good cause shown. *United States v. Rose*, 538 F.3d 175, 177 (3d Cir. 2008).

III.    **Whether the district court erred in failing to suppress the evidence obtained during Strausbaugh's custodial interrogation.**

This Court exercises plenary review over the district court's legal conclusions, and clear error review of its factual findings. *Torres*, 534 F.3d at 209. Where a defendant fails to raise a suppression issue before

the district court, however, that issue is deemed waived absent good

cause shown. *Rose*, 538 F.3d at 177.

IV.   **Whether the district court erred when it denied Strausbaugh's insufficiency of the evidence-based motion for acquittal.**

This Court exercises plenary review over the grant or denial of a

motion for acquittal, but must review the evidence in the light most

favorable to the government and sustain the verdict "if any rational

trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *United States v. Mike*, 655 F.3d 167, 174 (3d Cir.

2011).

V.    **Whether the district court's sentence of 45 years' imprisonment upon Strausbaugh's conviction amounted to cruel and unusual punishment.**

This Court's review of a defendant's Eighth Amendment challenge to

his sentence is plenary. In undertaking this review, however, this Court

must remain mindful that the Eighth Amendment only proscribes

punishment grossly disproportionate to the severity of the crime and

will only find a Constitutional violation in extraordinary cases. *United

States v. Miknevich*, 638 F.3d 178, 185-86 (3d Cir. 2011).

3

# STATEMENT OF THE CASE

## A.    *Procedural History*

On March 18, 2011, January 6, 2010, the United States Postal

Inspection Service filed a criminal complaint against the defendant,

Michael Strausbaugh, alleging that he had committed the crimes of

sexual exploitation of children in violation of 18 U.S.C. §§ 2251(a) and

(b) and of engaging in activities related to material involving the sexual

exploitation of minors in violation of 18 U.S.C. § 2252. Rec. Doc. No. 1.[1]

Five days later, on March 23, 2011, a grand jury in the Middle

District of Pennsylvania returned a three-count indictment naming as

its two defendants Michael Strausbaugh and his wife, Rebecca. Rec.

Doc. No. 9. In this indictment both Strausbaugh and his wife were

charged with one count of sexual exploitation of a child in violation of 18

U.S.C. §§ 2251(a) and (b) and 2. *Id.* Michael Strausbaugh was also

charged with one count of distribution of child pornography in violation

of 18 U.S.C. §§ 2252(a)(2) and (b); and one count of possession of child

---

[1]    For citations to the district court record, this brief will use the
citation form "Rec. Doc. No." followed by the district court docket
number of the relevant document and any applicable pages or exhibit
labels.

pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(b). *Id.* Michael Strausbaugh entered a plea of "not guilty" to all three charges on that same day. Rec. Doc. No. 14.

On May 4, 2011, a six-count superseding indictment was returned that again named Michael Strausbaugh and his wife, Rebecca, as its two defendants. App. 62A. In this superseding indictment, Both Michael Strausbaugh and his wife were charged with three counts of sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and (b) and 2. *Id.* Michael Strausbaugh was also charged with one count of distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b); and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(b). *Id.* Finally, the superseding indictment contained a single criminal forfeiture count under 18 U.S.C. § 2253. On June 6, 2011, Michael Strausbaugh entered his plea of "not guilty" to the charges contained in the superseding indictment. Rec. Doc. No. 48.

On October 26, 2011, at the close of a three-day, non-jury criminal trial, Michael Strausbaugh was found guilty of all of the substantive charges against him contained in the superseding indictment. App. 5A.

Following Strausbaugh's convictions, the United States Probation Office assembled a Pre-Sentence Report. In this report, Strausbaugh's total offense level was determined to be 43, and his criminal history category set at V. PSR ¶¶ 64, 70. Based on these calculations, Strausbaugh's sentencing guideline range called for life imprisonment. PSR ¶ 93. By virtue of the statutory maximums set for his sentences of conviction, however, this guideline range was restricted to 2,520 months. *Id.*

The district court conducted Strausbaugh's sentencing hearing on May 8, 2012, and ultimately sentenced Strausbaugh to, among other things, a total of 540 months of imprisonment. App. 7A. This consisted of 360 months for each of the sexual exploitation of a child counts and 120 months on the possession of child pornography count, all running concurrently, plus 180 months on the distribution of child pornography count to run consecutively. *Id.*

Strausbaugh filed his notice of appeal on May 15, 2012. App. 2A.

## B.    Statement of the Facts

### 1. The offense conduct and investigation.

In February of 2011, officers of the Toronto, Canada Police Services (TPS), executed a search warrant in Whitby, Ontario, based on an investigation into a Canadian citizen, John Trumbley, suspected of creating and distributing child pornography. App. 41A, 124A, Rec. Doc. No. 174 (Transcript of Strausbaugh suppression hearing) at 5. Trumbley would eventually confess and allow TPS to access his email accounts. *Id.* A review of those email accounts revealed that Trumbley had been in touch with a United States resident using the email address *wantmelittle@gmail.com.* App. 42A, 125A, Rec. Doc. No. 174 at 5.

Trumbley's email account revealed that a "Bob Smith" using the *wantmelittle* address had sent him an email on February 5, 2011, that stated "I have some good pics nude of 8 month old niece let ne {sic} know if you want to trade if you have nude." App. 42A. Trumbley responded with "yes I've got lots of nudes, let's see a preview." *Id. Wantmelittle* responded with another email saying "here's a preview send some back and I will send set I like personal pics." *Id.* Attached to *wantmelittle's*

7

second email was a photograph of a female infant, naked from the waist down except for socks, lying on a couch with legs spread and with the focal point of the photo being the infant's vaginal area. App 43A, Gov't Trial exhibit 1. After receiving this email and photo, Trumbley responded to *wantmelittle* by saying "mmmm love baby pussy, wanna dig my face in and slurp it." App. 43A, 126A.

An examination of the electronically encoded data contained in the digital image (the "EXIF" data) revealed that the photo of the infant had been taken using a Konica Minolta Dimage Z20 digital camera, and that it had been taken on December 28, 2010. App. 43A, 128A.

After identifying the *wantmelittle* email address as likely originating in the United States, TPS forwarded the results of their investigation to the United States Postal Inspection Service (USPIS). App. 43A, 129A, Rec. Doc. No. 174 at 6. Upon receiving this referral, USPIS issued a subpoena to Google seeking the Internet Protocol (IP) address for the *wantmelittle* email account, as well as any secondary email accounts associated with it. App. 43A-44A, 129A-131A, Rec. Doc. No. 174 at 6-8. Google provided a number of IP addresses associated with *wantmelittle* that appeared to be a part of Verizon Wireless

services, as well as a secondary email account of

*alexstrausbaugh@gmail.com. Id.*

A subpoena of Verizon records pertaining to the identified IP addresses for the time period in question revealed logins by an account registered to Rebecca Strausbaugh of New Oxford, PA on a WiFi mobile "hotspot" device. App. 44A, 132A, Rec. Doc. No. 174 at 10.

Upon receiving this information, USPIS contacted the New Oxford letter carrier responsible for the address in question and determined that a Michael and Rebecca Strausbaugh lived at the suspect address, that someone named Alex Strausbaugh also lived at the residence, and that a business named "Mild to Wild Diesel" also received mail there. App. 45A, 133A, Rec. Doc. No. 174 at 11-12.

After searching the internet for a "Mild to Wild Diesel," USPIS was able to obtain the email address of *mildtowilddiesel@gmail.com*. In turn USPIS subpoenaed Google for information on this email address. App. 45A-46A, 133A-134A, Rec. Doc. No. 174 at 12-13. The results showed that logins to the *mildtowilddiesel* account were made from the same IP addresses as *wantmelittle*, and in some cases within seconds of each other. The *mildtowilddiesel* account also was listed as belonging to

Michael Strausbaugh and revealed a secondary email account for

Rebecca Strausbaugh. *Id.* Based upon this (and more) information, the

USPIS sought and obtained a search warrant for the Strausbaugh's

New Oxford, PA property. App. 35A.

On March 18, 2011, federal agents executed this search warrant.

App. 136A-137A. Upon execution of the search warrant, federal agents

identified a couch with a fabric pattern matching that of the couch in

the photo sent to Canada, as well as a Konica Minolta Dimage camera.

App. 190A-192A. Other computing equipment was also identified, and

this, along with the camera were taken outside to a mobile crime lab

equipped to analyze their contents. App. 198A. Later, after the

execution of the search warrant was completed, USPIS gleaned from

jailhouse telephone calls made by Michael Strausbaugh that they had

missed a pair of external computer hard drives in their search, and they

were then able to obtain them. App. 199A.

Preliminary examination of the contents of the camera and

memory card turned up not only the photo sent to Trumbley, but others

involving the same infant, again naked from the waist down, on the

same couch, with hands spreading the infant's legs apart, male hands

spreading the infant's labia, and a pair of pictures with an erect male penis pressed against the infant's labia. App. 207A. Pictures with Rebecca Strausbaugh holding the baby were also found on the camera. *Id.* Examination of the other electronic storage devices revealed the same photographs on one of the external hard drives, as well as additional child pornography images and video. App. 223A-248A.

During the execution of this search warrant, Michael Strausbaugh was questioned by federal agents. App. 203A. Before any questioning, agents read Strausbaugh his *Miranda* rights and presented him with a written copy of those rights. *See* App. 60A, 204A-205A. As each right was explained, Strausbaugh initialed the written copy listing his *Miranda* rights and then provided a signature acknowledging he had received the same. *Id.* Strausbaugh then signed an express waiver of those rights before he answered any questions. *See* App. 60A, 205A-206A. Even after signing the waiver, out of an abundance of caution, investigators orally went over Strausbaugh's rights against self-incrimination with him yet again before beginning questioning. *See* Government's trial Exhibit 74b (transcript of Michael Strausbaugh interview).

During the interview, Michael Strausbaugh confessed that it was his niece that was featured in the images of the infant, that he had taken the photos, that it was his and his wife's hands that were occasionally seen spreading the infant's legs and labia, and that it was his penis pressed against his niece's labia. App. 206A-207A, Government trial Exhibit 74b. Strausbaugh also admitted to storing the photos, masturbating to them, sending some of the photos to other people via the *wantmelittle* email address and uploads to a website, and doing so in the hope of getting pictures in return. *Id.*

### 2. Strausbaugh's indictments.

Later on the day of the execution of the search warrant – March 18, 2011 – USPIS filed a criminal complaint against Michael Strausbaugh alleging that he had committed the crimes of sexual exploitation of children in violation of 18 U.S.C. §§ 2251(a) and (b) and of engaging in activities related to material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252. Rec. Doc. No. 1.

Five days later, on March 23, 2011, a grand jury in the Middle District of Pennsylvania returned a three-count indictment naming as its two defendants Michael Strausbaugh and his wife, Rebecca. Rec.

Doc. No. 9. In this indictment both Strausbaugh and his wife were charged with one count of sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and (b) and 2. *Id.* Michael Strausbaugh was also charged with one count of distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b); and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(b). *Id.* Michael Strausbaugh entered a plea of "not guilty" to all three charges on that same day. Rec. Doc. No. 14.

On May 4, 2011, a six-count superseding indictment was returned that again named Michael Strausbaugh and his wife, Rebecca, as its two defendants. App. 62A. In this superseding indictment, Both Michael Strausbaugh and his wife were charged with three counts of sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and (b) and 2. *Id.* Michael Strausbaugh was also charged with one count of distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b); and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(b). *Id.* Finally, the superseding indictment contained a single criminal forfeiture count under 18 U.S.C. § 2253. On

June 6, 2011, Michael Strausbaugh entered his plea of "not guilty" to the charges contained in the superseding indictment. Rec. Doc. No. 48.

### 3. Strausbaugh's suppression motion.

On June 16, 2011, Michael Strausbaugh filed a motion before the district court seeking the suppression of physical evidence seized during the March 18, 2011, search of his home and of his statement to investigators. Rec. Doc. No. 52. In support of this motion Strausbaugh raised three arguments: (1) that the use of the IP addresses to support probable cause was unreasonable due the fact that the list of IP addresses associated with the *wantmelittle* gmail account relied upon by investigators covered logins 20 days after the February nude infant photo was sent to Trumbley in Canada; (2) that the search warrant, while it authorized seizure of the Konica Minolta Dimage camera, did not authorize a search of the contents of the camera (that is, the digital photographs contained in memory); and (3) Strausbaugh's custodial confession resulted from these illegal searches, and thus required suppression as fruit of the poisonous tree. Rec. Doc. No. 53.

On August 30, 2011, the district court conducted a hearing on the suppression motion, and the government produced the testimony of the

Postal Inspector in charge of the March 18, 2011 search, Inspector

Michael Corricelli. Rec. Doc. 174. In his testimony, Inspector Corricelli

detailed the investigation leading to the search as detailed above. *Id.*

After hearing this testimony as well as the arguments of counsel, the

district court issued an order denying Strausbaugh's suppression

motion. App. 31A. In doing so, the district court noted that the warrant

was based on "far more" than just the IP addresses obtained from

Google, but also evidence that corroborated the belief that the

Strausbaugh residence was the source of the image sent to Canada. *Id.*

The district court also rejected the claim that the contents of the camera

should not have been searched since the warrant allowed for the

searching of any electronic data or storage devices belonging to items

listed within the affidavit of probable cause, and the camera was so

listed. *Id.* Finally, given that the district court had rejected the claim

that the search was illegal, it also rejected any potential claim that

Strausbaugh's confessions were fruit of any poisonous tree. *Id.*

### 4. Strausbaugh's trial.

Beginning on October 24, 2011, and continuing over three days,

the district court conducted a bench trial of the charges against Michael

Strausbaugh and his wife, Rebecca. App. 101A-605A. During trial, Postal Inspector Corricelli once again detailed the steps taken during the investigation, the execution of the search warrant, the images discovered, and Michael Strausbaugh's confession under questioning. App. 125A-142A, 190A-295A. In addition, among other witnesses, a Pennsylvania State Police trooper involved in the recovery of the child pornography from Strausbaugh's camera and hard drive also testified as to the contents of those devices and how they were recovered. App. 310A-336A.

After the government's case in chief, Michael Strausbaugh took the stand in his own defense. App. 387A- 456A. In answering his first question on the witness stand, Strausbaugh admitted to committing the acts with which he was charged in his indictment as it related to the photographs of his infant niece. App. 387A. Strausbaugh also admitted sending the picture that originated the investigation to the recipient in Canada and to trading his pictures on the internet roughly eight to a dozen times. App. 391A-392A, 412A. He further admitted to having taken these photos on at least four different occasions, having the assistance of his wife, using his hands to spread his niece's legs and

labia for the photographs, and to placing his penis against his niece's labia in a number of photographs. App. 404A-408A.

At the close of the trial on October 26, 2011, Strausbaugh was found guilty of all of the substantive charges against him contained in the superseding indictment. App. 5A, 602A.

### 5. Strasbaugh's sentencing.

Following Strausbaugh's convictions, the United States Probation Office assembled a Pre-Sentence Report. In this report, Strausbaugh's total offense level was determined to be 43, and his criminal history category set at V. PSR ¶¶ 64, 70. Based on these calculations, Strausbaugh's sentencing guideline range called for life imprisonment. PSR ¶ 93. By virtue of the statutory maximums set for his sentences of conviction, however, this guideline range was restricted to 2,520 months. *Id.*

The district court conducted Strausbaugh's sentencing hearing on May 8, 2012, and ultimately sentenced Strausbaugh to, among other things, a total of 540 months of imprisonment. App. 7A. This consisted of 360 months for each of the sexual exploitation of a child counts and 120 months on the possession of child pornography count, all running

concurrently, plus 180 months on the distribution of child pornography count to run consecutively. *Id.*

Strausbaugh filed his notice of appeal on May 15, 2012. App. 2A.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Strausbaugh's wife, Rebecca, has also filed an appeal of her conviction and sentence to this Court, and it is currently docketed at *United States v. Strausbaugh*, 3d Cir. No. 12-2416.

Apart from that case, the United States is unaware of any other case or proceeding related to the instant matter and the issues presented on this appeal.

# SUMMARY OF ARGUMENT

I.     Strausbaugh's claim that the district court allowed an unacceptable violation of the United States' Mutual Legal Assistance Treaty with Canada fails because he lacks standing to assert the provisions of the treaty, and the treaty's provisions expressly bar the use of the treaty by a defendant seeking to obtain, suppress, or exclude evidence.

II.    The district court did not err in refusing to suppress physical evidence seized during the search of Strausbaugh's house as there was a substantial basis to believe that the photograph Strausbaugh had sent to Canada constituted child pornography, and that it had been sent from the Strausbaugh property. This evidence consisted of more than a simply random use of a single dynamic IP address, but a wide variety of evidence compiled during the Postal Inspector's investigation. Moreover, the search was not overbroad in allowing for the seizure of more than just the camera used to take the pornographic pictures, as the distribution to Canada as well as the investigator's experience with other child pornographers indicated contraband was

likely to be found in other locations within the property, including computer and electronic equipment.

III. The district court did not err in allowing into evidence Strausbaugh's interview on the date of the execution of the search warrant, as he was advised of his Miranda right orally and in writing, initialed each of them and then waived them. Despite Strausbaugh's claims to the contrary, at no point did investigators lie, intimidate, or otherwise coerce him into signing this waiver or making his statement; thus, it was both voluntary and knowing.

IV. The district court did not err in denying Strausbaugh's sufficiency of the evidence-based motion for judgment of acquittal as every element of the charged crimes had been proven through either the introduction of Strausbaugh's own admissions (both during the execution of the search warrant and during his testimony) and through the admission of photographs that could easily be viewed as child pornography and uncontradicted evidence that intrumentalities used in the production and distribution of child pornography traveled in interstate commerce.

V. Strausbaugh's 45-year sentence is not cruel and unusual

punishment as it falls squarely within the statutory limits for the crimes of which he was convicted, was well below both the maximum and minimum sentence totals that would have applied had the sentences all run consecutively, and is squarely in line with sentences for similar crimes (and similar numbers of convictions) upheld by this Court and others.

## ARGUMENT

I.   **Strausbaugh lacks standing to assert a violation of the Mutual Legal Assistance Treaty in effect between the United States and Canada, and in any event, no such violation occurred.**

On appeal, Strausbaugh puts forth a handful of arguments for why his conviction and sentence should be overturned. Each will be addressed in turn. As his lead argument, Strausbaugh asserts that the district court improperly allowed a violation of the Mutual Legal Assistance Treaty (MLAT) in effect between the United States and Canada. Strausbaugh Br. at 7-8. This claim must be rejected as Strausbaugh lacks standing to enforce the treaty, and in any event, the terms of the treaty itself do not support a claim of any violation.

As an initial matter, however, it should be noted that Strausbaugh did not raise this argument before the district court. As such, this Court's review of the issue is for plain error. *Puckett v. United States*, 556 U.S. 129 (2009). Under plain error review, in order to reverse, this Court must find (1) an error; (2) that is plain or obvious; and (3) it must have affected substantial rights. *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725, 733-35 (1993), and *United States v. Davis*, 407 F.3d 162, 164 (3d Cir. 2005)). In

the instant case, the district court did not commit plain error in failing to find a violation of the MLAT.

The United States' MLAT with Canada was signed on March 18, 1985, and entered into force on January 24, 1990. *See* 24 I.L.M. 1092; *Treaties in Force* (United States Department of State).[2]  Of particular note within the terms of the treaty is Article II, section 4:

> 4. This Treaty is intended solely for mutual legal assistance between the Parties. The provisions of this Treaty shall not give rise to a right on the part of a private party to obtain, suppress or exclude any evidence or to impede the execution of a request.

24 I.L.M. 1092.

By the above express terms, the treaty disavows any ability for a defendant to do what Strausbaugh is attempting to do in this appeal – use the terms of the treaty to suppress evidence used in his trial. Given that language, Strausbaugh lacks standing to assert a violation since, under international law, "it is the contracting foreign government, not the defendant, that would have the right to complain about a [treaty] violation." *United States v. Cordero,* 668 F.2d 32, 38 (1st Cir.1981).

---

[2]    An electronic copy of Treaties in Force may be obtained online at http://www.state.gov/s/l/treaty/tif/

Moreover, a review of the MLAT's terms does not reveal that any violation occurred in Strausbaugh's case in any event. Strausbaugh's claim rest on the theory that the picture he emailed to Canada did not violate Canadian law; thus, it was a violation for Canadian authorities to forward it to the United States Department of Justice. *See* Strausbaugh Br. at 8. Even if his characterization of the legality of the picture were accurate (and the United States does not concede that it is), his conclusion does not follow. While the MLAT does spell out specific areas where legal assistance is contemplated, it does not forbid assistance being provided in other areas. *See* generally 24 I.L.M. 1092. In addition, Article II, Section 3 states that "[a]ssistance shall be provided without regard to whether the conduct under investigation or prosecution in the Requesting State constitutes an offence or may be prosecuted by the Requested State." As such, the legality of the photo in Canada is irrelevant.

In light of the above, to the extent that Strausbaugh seeks to overturn his conviction and sentence based on a claimed violation of the MLAT in effect between the United States and Canada, his attempt should be denied.

II.  The district court did not err in refusing to suppress evidence seized during the search of Strausbaugh's home, as it was based on probable cause assembled during a thorough pre-search investigation, was executed in good faith, and was not overbroad.

Strausbaugh's next three arguments, while given separate headings in his brief, all attack the probable cause underpinning the search warrant issued for his home, challenge the breadth of the evidence seized during that search, and argue for suppression of that evidence. Strausbaugh Br. at 9-22. Each of these arguments will be addressed separately, with particular attention paid to the law applicable to any probable cause review, as well the good faith exception to the exclusionary rule.

A.  *Applicable law.*

As the Supreme Court recently reiterated, the test for probable Cause is not reducible to "precise definition or quantification." *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the [probable cause] decision." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). All that is required is the kind of "fair

probability" on which "reasonable and prudent [people,] not legal

technicians, act." *Id.* (quoting *Gates*, 462 U.S. 213 at 238); *see also*

*Brinegar v. United States*, 338 U.S. 160, 175 (1949) ("The substance of

all definitions of probable cause is a reasonable ground for belief of

guilt.") and *Hill v. California*, 401 U.S. 797, 804 (1971) ("Sufficient

probability, not certainty, is the touchstone of reasonableness under the

Fourth Amendment.")

When assessing whether there is probable cause, a court must

look to the totality of the circumstances, because it is a "fluid concept"

and not readily reduced to set legal rules. *Id.* at 1055-56. When

reviewing a magistrate judge's finding of probable cause, this Court

must uphold that finding if a substantial basis exists to support it, even

if a different magistrate judge might not have made the same finding.

*United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011). An after-

the-fact review of the sufficiency of a supporting affidavit should not be

*de novo*, and the resolution of marginal cases should be determined by

the preference for warrants. *United States v. Ninety-Two Thousand*

*Four Hundred Twenty-Two Dollars And Fifty-Seven Cents*, 307 F.3d

137, 146-47 (3d Cir. 2002) (citing *Gates*, 462 U.S. at 236 and *United States v. Jones*, 994 F.2d 1051, 1057-58 (3d Cir. 1993)).

Even if this Court were to find a probable cause finding to lack a sufficient basis, that would not be the end of the analysis. Even the fruits of an improperly issued warrant may escape exclusion from use at trial if law enforcement officers executing the warrant have a reasonable basis to rely on its authority. *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (citing *United States v. Williams*, 3 F.3d 69 (3d Cir. 1993)). The test for whether this "good faith" exception to the exclusionary rule applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorizations." *Id.* (citing *United States v. Loy*, 191 F.3d 360 (3d Cir. 1999)). Typically, the mere existence of a warrant in the first place is enough. *Id.* (citing *Williams*, 3 F.3d at 74 and *United States v. Leon*, 468 U.S. 897 (1984)). That being said, this Court has identified four circumstances where law enforcement's reliance on a warrant would not be reasonable, and thus the "good faith exception" would not apply:

> (1) Where the warrant was issued based on a deliberately reckless or false affidavit;

28

    (2)  Where the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;

    (3)  Where the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or

    (4)  When the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Id.* (citing *Williams*, 3 F.3d at 74, n. 4). On appeal, Strausbaugh does not argue that the magistrate who issued the search warrant abandoned his judicial role, nor that the warrant was not particularized, as such, in order to defeat any claim of good faith in this case, he must show either deliberate reckless or false information was contained in the affidavit or that the indicia of probable cause was almost non-existent. This he cannot do.

    *B.*   *Probable cause.*

    Strausbaugh's first challenges to the probable cause underlying the search of his home revolve around the picture and emails sent to Canada. Strausbaugh Br. at 9-15. Specifically, he asserts that the picture he sent to Canada was not "lascivious" and thus did not constitute child pornography; that Inspector Corricelli misrepresented

the nature of the photograph to the magistrate judge (who did not view the photograph himself); and that Strausbaugh's emails only referenced "personal pictures" and mere nudity. *Id.*

(1) The lascivious nature of the Canada photo.

In challenging a finding of lasciviousness with regard to the photo he emailed to Canada (and thus the basis for the warrant), Strausbaugh focuses on whether it meets the factors spelled out in *United States v. Dost*, 636 F.Supp.828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987)). These factors include:

(1)  Whether the focal point of the visual depiction is on the child's genitalia or pubic area;

(2)  Whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

(3)  Whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4)  Whether the child is fully or partially clothed, or nude;

(5)  Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and

(6)  Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* These factors are neither exclusive nor conclusive and operate simply as a starting point to determine whether an image is likely "so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur. *United States v. Hill*, 459 F.3d 966, 972 (9th Cir. 2006) (quoting *Wiegand*, 812 F.2d at 1244). In *Dost*, the court encouraged any other factor that may be relevant in the particular case to be considered in addition to the six enumerated guiding principles defined. *Dost*, 636 F. Supp. 828, 832. Moreover, reliance on the *Dost* factors to a mathematical certainty or relying on them exclusively is not required. *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) These factors were specifically adopted by this Court in *United States v. Villard*, 885 F.2d 117. (3d Cir. 1989).

Before examining the *Dost* factors, however, it should be remembered that in a probable cause review (as opposed to the review of a conviction), this Court is looking to whether there is a "fair probability" of criminal activity and does not require certainty. Thus, the application of the above *Dost* factors, which already allows for significant leeway in examining questionable images, is relaxed even further when it is put in the context of a review for probable cause.

31

Indeed, at least one Circuit Court of Appeals has stated that the *Dost* factors are "arguably of diminished utility for the purposes of Fourth Amendment analysis." *Rivera*, 546 F.3d at 252.

Nonetheless, an examination of the photograph Strausbaugh sent to his email correspondent in Canada reveals that it meets multiple *Dost* factors, and thus there was a "substantial basis" for the magistrate judge to find it supported the issuance of a search warrant.

First, there can be little doubt the photograph's central focus was the eight-month-old victim's genital or pubic area. She is naked from the waist down, lying on her back with her pubic area in the center of the photo. Her legs (bare except for socks) are spread wide, and the camera is close enough or zoomed in enough that parts of her feet are cut off by the edges of the photograph. The victim's face is obscured by a bib that has been raised over it, but given the framing of the photograph, parts of the victim's face may have been cut off by the edge of the photograph anyway. Government Trial Exhibit 1.

Second, the pose could certainly be viewed as sexually suggestive. While a living room couch is, admittedly, not necessarily a sexually suggestive place, *Dost* states that a visual depiction may be sexually

suggestive based upon the place *or pose* being one generally associated with sexual activity. *Dost*, 636 F. Supp. at 832 (emphasis added). A photographic subject lying naked on her back, naked from the waist down, with her legs raised and spread apart could certainly be considered to be in a sexually suggestive pose.

As to the third factor, it is admitted that an eight-month old will regularly be lying on her back naked from the waist down with legs up during diaper changes, so the pose the victim of this photograph was in is not particularly "unnatural." Nonetheless, it is worth noting that in the photograph Strausbaugh sent to Canada, there is no diaper present anywhere, nor any evidence that a diaper change was underway.

The fourth *Dost* factor was undoubtedly met as the victim was naked from the waist down except for socks.

The fifth factor is admittedly not present as nothing about the photograph suggests sexual coyness or willingness to engage in sexual activity.

Finally, there is the final consideration of whether the photograph was designed to generate a sexual response in the viewer. For this the email exchange between Strausbaugh and his contact in Canada is

particularly helpful. On February 5, 2011, Strausbaugh (using the alias

"Bob Smith" emailed his Canadian contact, John Trumbley, to say "I

have some good pics nude of eight-month-old niece let ne [sic] know if

you want to trade if you have nude." App. 42A. Trumbley responded

with "yes I've got lots of nudes, let's see a preview." *Id.* Strausbaugh

responded with another email saying "here's a preview send some back

and I will send set I like personal pics." *Id.* Attached to Strausbaugh's

second email was the photograph discussed above. App 43A. After

receiving this email and photo, Trumbley responded to Strausbaugh by

saying "mmmm love baby pussy, wanna dig my face in and slurp it."

App. 43A, 126A.

In light of the above, Strausbaugh created the photo and

distributed it to Trumbley specifically to elicit a sexual response in the

hope that it would induce Trumbley to give nude photographs he

possessed to Strausbaugh in return. Any suggestion that this email

exchange was simply an innocent discussion about exchanging harmless

"personal pictures" is simply ridiculous and a gross minimization of

Straughsbaugh's conduct.

34

Given that multiple *Dost* factors were present in the photograph that Strausbaugh sent to Canada, and that probable cause only concerns itself with probabilities and not certainties, there was easily a substantial basis for the magistrate judge finding probable cause to believe that Strausbaugh was engaged in the creation and distribution of child pornography and that issuance of a warrant was justified.

(2) <u>Inspector Corricelli's description of the photograph.</u>

It is admitted that, in submitting his affidavit of probable cause, Postal Inspector Corricelli did not submit a copy of the photograph Strausbaugh emailed to Canada for review of the Court. While Strausbaugh takes issue with this, the fact is that it is well established that such a review by the magistrate judge is unnecessary. *Miknevich*, 638 F.3d at 183 (quoting *New York v. P.J. Video*, 475 U.S. 868, 874 (1986)).

Strausbaugh also alleges that Corricelli misrepresented the nature of the photo to the magistrate judge. Strausbaugh Br. at 12. In his affidavit of probable cause, Inspector Corricelli described the photo as follows:

> "it was of a pre-pubescent girl who appears to be under one year of age. She is lying on what appears to be a couch and in [sic]

naked from the waist down. Her legs are spread and the clear focus of the image is on her vaginal area. The baby appears to have a bib on and this bib is lifted up over her face."

App. 43A. Far from being a misrepresentation, this description was 100% accurate, neither overstating, nor understating the contents of the photo.

### (3) Strausbaugh's emails to Trumbley.

Finally, in his initial challenge to the probable cause affidavit, Strausbaugh asserts that the nature of his email exchange with Trumbley was "misrepresented" and does not indicate the trafficking of child pornography "in any way." Strausbaugh Br. at 12, 14-15. As detailed above this argument lacks any basis whatsoever.

As an initial matter, the text and description of the Strausbaugh/Trumbley email exchange was included in the affidavit verbatim. App. 42A-43A. Despite his claims this was "misrepresented" Strausbaugh does not explain how the transcription was inaccurate.

As to whether it indicated only an interest in exchanging innocent personal photos as Strausbaugh asserts, or a proposal to trade illicit child pornography as Corricelli believed, there was more than a substantial basis for the magistrate judge to find it to more probably

36

consist of the latter considering that Strausbaugh proposed to trade "nude pics" for "nude pics" to a contact who emailed him "mmmm love baby pussy, wanna dig my face in and slurp it" while Strausbaugh was using an alias and an email address of *wantmelittle*.

In short, there was ample probable cause to believe that Strausbaugh[3] was creating and distributing child pornography, but even if the affidavit was insufficient, the good faith exception to the exclusionary rule applies. As such, the district court's decision not to exclude evidence seized in the search of Strausbaugh's home should be affirmed.

## C.    *The scope of the search.*

Strausbaugh's next complaint pertains to the execution of the search warrant on his New Oxford, Pennsylvania property and a claim that the search should have been limited in scope to the Konica Minolta camera that was found and seized and, perhaps, a few more pictures. Strausbaugh Br. at 16-18. In support for this argument, however, Strausbaugh only provides arguments largely repeating the ones he

---

[3]    Of course the issue of whether the photo and emails constituted distribution of child pornography is separate from the issue of whether there was probable cause to believe that Strausbaugh was the one who sent the emails and photos. The latter issue is addressed in argument section II(D), below.

made against the existence of any probable cause in the first place, and not the breadth of the ultimate search itself. *See Id.* To the extent he has articulated an argument addressing the breadth of the search, however, he waived this argument by failing to raise it before the district court, and it fails on the merits in light of the evidence and probable cause supporting the search of the New Oxford, Pennsylvania property.

At the outset, in his suppression motion, Strausbaugh's only objection to the breadth and scope of the search pertained to an attempt to argue that the contents of the camera were not within the scope of the warrant. See Rec. Doc. No. 53 at 13-14. No objection was raised to the search and seizure of other items. In effect, Strausbaugh's argument during his suppression proceedings before the district court was the opposite of what he argues now. As such, his current argument that the scope of the warrant should have been limited solely to the camera and, perhaps, a few other pictures was waived and cannot be addressed on appeal absent a showing of good cause. *United States v. Rose*, 538 F.3d 175, 177 (3d Cir. 2008).

Even were this Court to reach the merits of this argument, however, it would still fail. In fixing the scope of a search and seizure authorized by a warrant, a district court must measure the ambit of probable cause established by the affidavit submitted in support of the proposed warrant. *United States v. Christine*, 687 F.2d 749, 754 (3d Cir. 1982). Probable cause exists "when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "General warrants" are improper as they simple authorize "a general, exploratory rummaging in a person's belongings" with no specific or inclusive terms as to what is to be searched or seized. *See United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars And Fifty-Seven Cents*, 307 F.3d 137, 148-49 (3d Cir. 2002) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). Likewise a warrant can be overbroad when it is both specific and inclusive as to what is to be searched or seized, but authorizes the seizure of items to which there is no probable cause. *Id.* at 149. When reviewing a magistrate's determination of probable cause, however, that determination should be paid great deference by reviewing courts. *In re Impounded Case (Law Firm)*, 840 F.2d 196, 200

(3d Cir. 1988) (citing *Gates*, 462 U.S. at 236); *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993) (this court "simply ensures that the magistrate had a substantial basis for concluding that probable cause existed.").

Strausbaugh's argument appears to be one of overbreadth as opposed to a claim of the warrant being too general. Were he to claim that the warrant was too "general" such a claim would have to fail as both the affidavit in support of the search warrant in this case, and the warrant itself were both specific and inclusive as to exactly what evidence was subject to search and seizure. App. 54A-57A. Even the overbreadth argument lacks any basis, however, given the evidence presented in support of the search warrant.

As detailed above, by the time USPIS applied for its warrant, it was able to produce evidence that the internet, email, and electronic equipment and data beyond simply the camera itself had been used to distribute child pornography. This alone, at the very least, provided a "fair probability" that evidence of child pornography-related crimes would be found within the Strausbaugh home in locations beyond the Konica Minolta camera. This was not the only evidence supporting the

scope of the warrant, however. Postal Inspector Corricelli, whose affidavit supported the warrant, also demonstrated he was an investigator with specialized knowledge and experience as to the typical manner in which child pornographers create, distribute, receive, and store their illegal contraband and that it went well beyond simply the camera used to take photos and included, among other things, computer equipment, storage devices, VHS tapes, DVDs, and more. App. 36A, 38A-40A, 49A-52A. It is well established that a law enforcement official's specialized experience and training is a legitimate consideration in determining probable cause. *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) (citing *United States v. Arvizu*, 543 U.S. 266, 275 (2002)).

In light of the above, then, it was not error for the district court to uphold the search and seizure of evidence beyond the Konica Minolta camera, and Strausbaugh's conviction should be affirmed.

D.    *The use of Internet Protocol addresses.*

Strausbaugh also specifically attempts to undermine the probable cause supporting the warrant used to search his property with an attack on the USPIS's use of an Internet Protocol (IP) address as part of

41

its efforts to pin down the origin of the photo sent to Canada from the *wantmelittle* email address. *See* Strausbaugh Br. at 18-20. Specifically, Strausbaugh asserts that the IP addresses obtained by the USPIS were ones used some 20 days after the emailing to Canada and that the Strausbaugh name and address was just one of a number of different names that could have been associated with that "dynamic" IP address. *Id.* Had the USPIS simply looked up the name associated with the IP address in question 20 days after the fact and relied only upon that tenuous connection to establish probable cause, then Strausbaugh's arguments might possess some merit. As it is, however, the USPIS assembled far more evidence to connect the IP addresses provided by Google in relation to the *wantmelittle* email account to the Strausbaughs and their New Oxford, PA property. As such, the district court did not err in holding that all of this evidence (including the IP evidence) together supported the issuance of a warrant.

When making probable cause determinations, a court must look to the totality of the circumstances, and must not "overly compartmentalize" its analysis. *Yusuf,* 461 F.3d at 390; *see also Florida c. Harris,* 133 S.Ct. 1050, 1052 (2013), *Maryland v. Pringle,* 540 U.S.

42

366, 371 (2003). This requires courts to consider the cumulative weight of the information provided by the investigating officer in combination with the reasonable inferences that an officer is allowed to draw given his or her specialized training. *Yusuf,* 461 F.3d at 390. Looking at the instant case, focusing only on the dynamic nature and time frame of the IP addresses obtained by USPIS would "overly compartmentalize" the probable cause analysis and ignore all of the corroborating evidence that, once cross referenced with the IP address evidence, resulted in a clear basis for identifying the Strausbaugh New Oxford, Pennsylvania property as the origination point for the child pornography image sent to Canada.

First, in addition to providing the IP addresses used to access the *wantmelittle* email address registered to a "Bob Smith," Google indicated that a secondary email account, *alexstrausbaugh@gmail.com,* was associated with the *wantmelittle* account. 43A-44A, 129A-131A, Rec. Doc. No. 174 at 6-8. This alone was a strong piece of corroborating evidence once it was determined that at least some of the IP addresses provided by Google reconciled to a Rebecca Strausbaugh of New Oxford, Pennsylvania. App. 44A, 132A, Rec. Doc. No. 174 at 10.

Of course, the USPIS did not just rely on this significant evidence in seeking a warrant as, upon receiving this information, USPIS contacted the New Oxford letter carrier responsible for address in question and determined that a Michael and Rebecca Strausbaugh lived at the suspect address, that someone named Alex Strausbaugh also lived at the residence, and that a business named "Mild to Wild Diesel" also received mail there. App. 45A, 133A, Rec. Doc. No. 174 at 11-12.

After searching the internet for a "Mild to Wild Diesel," USPIS was able to obtain the email address of *mildtowilddiesel@gmail.com*. In turn USPIS subpoenaed Google for information on this email address. App. 45A-46A, 133A-134A, Rec. Doc. No. 174 at 12-13. The results showed that logins to the *mildtowilddiesel* account were made from the same IP addresses as *wantmelittle*, and in some cases within seconds of each other. The *mildtowilddiesel* account also was listed as belonging to Michael Strausbaugh and revealed a secondary email account for Rebecca Strausbaugh. *Id.* Finally, the mailing address of Mild to Wild was the same New Oxford, Pennsylvania address as that for the Strausbaughs. *Id.*

Thus, far from identifying the Strausbaugh's New Oxford, Pennsylvania property by random selection of a single IP address among many without anything more, the USPIS was able to use a panoply of evidence to link the *wantmelittle* email address to other email addresses, the names of the Strausbaughs, the "Mild to Wild Diesel" business operated by Strausbaugh, and to the Strausbaugh's New Oxford, PA property itself to the IP addresses provided by Google. In light of the above, Strausbaugh's argument, to the extent it relies on a claim that the IP address alone was insufficient to support a finding of probable cause, should be rejected and his conviction affirmed.

### III. The district court did not err in allowing Strausbaugh's admissions during a custodial interrogation into the record as there was no evidence that he was improperly coerced.

Strausbaugh's next claim involves the assertion that his admissions during a custodial interrogation conducted on the date of the search of his home should not have been allowed into evidence due to their being the result of improper coercion. Strausbaugh Br. at 22-23. While Strausbaugh did challenge the admission of his statement as part of his motion to suppress evidence, the sole basis was an assertion that the statement was "fruit of the poisonous tree," that is, that it only

came about due to the conducting of an illegal search. Rec. Doc. No. 53 at 14A-15A. At no time before the district court did Strausbaugh raise a claim that his statement and the confessions contained therein were the result of intimidation, coercion, or were otherwise made involuntarily. As such, any objection to their admission based on this theory was waived and cannot be addressed on appeal absent a showing of good cause. *Rose*, 538 F.3d at 177.

Even had Strausbaugh not waived this argument by failing to raise it below, however, it would still fail as the evidence of record simply does not support his claim.

The United States does not dispute that an admission made during a custodial interrogation may only be used if it is clear that the defendant waived his rights under *Miranda v. Arizona*, 348 U.S. 436 (1979), and that any waiver was made as a free, deliberate, and fully aware choice absent intimidation, coercion or deception. *See Berghuis v. Thompkins*, 130 S.Ct. 2250, 2260 (2010) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). It does dispute, however, any claim that Strausbaugh's waiver of his *Miranda* rights was involuntary.

Before answering questions of investigators executing the search warrant of his house, Strausbaugh had his *Miranda* rights read to him, and he was presented with a written copy of those rights. *See* App. 60A, 204A-205A. As each right was explained, Strausbaugh initialed the written copy listing his Miranda rights, and then provided a signature acknowledging he had received the same. *Id.* Strausbaugh then signed an express waiver of those rights before he answered any questions. *See* App. 60A, 205A-206A. Even after signing the waiver, out of an abundance of caution, investigators orally went over Strausbaugh's rights against self-incrimination with him yet again before beginning questioning. *See Government's trial Exhibit* 74b.

To nullify his waiver, Strausbaugh makes one argument: that one of his questioners, Postal Inspector Corriccelli, "testified and conceded that he in fact lied to [Strausbaugh] and promised that [Strausbaugh] would go to a 'rehabilitiation' center instead of 'jail.'"Strausbaugh Br. at 22. A review of the testimony that Strausbaugh relies upon for this claim demonstrates exactly the opposite, however.

The only place where this particular issue came up at trial was in this short exchange between Strausbaugh's trial attorney and Inspector Corriccelli:

> **Q.**    And during the interview that you had with my client, Mr. Strausbaugh, you talked about treatment and how he needs treatment and he can get better treatment. Were those discussed in the course of this interview?
>
> **A.**    Yes, sir, they were.
>
> **Q.**    And was that for the purpose to make him believe that maybe this wouldn't be a long jail term, maybe you could help him?
>
> **A.**    No, sir. It's an investigative strategy I've used numerous times to discuss what the person's motivation is behind what they're doing.

App. 295A.

Far from being an admission of lying to Strausbaugh or an admission of having promised a rehabilitation center sentence instead of jail time, Inspector Corricelli expressly denied that intimation. Couple the above with the fact that Strausbaugh cites to no other evidence in the record to indicate that he was improperly intimidated, coerced, or deceived into waiving his *Miranda* rights, and it simply strains credulity that the district court committed error. Strausbaugh's admissions were not coerced.

IV.   The district court did not err in denying Strausbaugh's motion for judgment of acquittal as Strausbaugh's own admissions combined with the uncontroverted evidence established each element of every crime of which he was committed.

Strausbaugh next argues that the district court erred in denying his motion for acquittal based on insufficiency of the evidence. Strausbaugh Br. at 20-22. He bases this on two arguments: (1) that the Canada picture as well as others for which he was held responsible were not child pornography, but rather "silly" "precious moment" pictures or pictures taken as part of his and his wife's investigation into possible abuse of his niece; and (2) that the government failed to prove that his actions had an effect on interstate commerce. *Id.* In making these claims, however, Strausbaugh ignores his own admissions, mischaracterizes the evidence produced against him, and disregards relevant case-law.

Before reaching the merits of this argument, however, it is worth noting that he did not raise before the district court all of the aspects of his current claims in his motion for acquittal. Most notably, while he did challenge whether there was sufficient evidence of an interstate nexus, at no time did he argue that the picture that he sent to Canada

could not be considered child pornography. *See* 362A-364A.[4] As such, to the extent that Strausbaugh asserts insufficiency of the evidence as to the nature of the Canada photo, this Court must review the issue for plain error. *United States v. Lee*, 612 F.3d 170, 179 (3d Cir. 2010). As to the issues that Strausbaugh *did* raise below, while this Court's review is plenary, the evidence must be viewed in the light most favorable to the government and the verdict sustained "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mike*, 655 F.3d 167, 174 (3d Cir. 2011).

*A. The nature of the photos.*

Even leaving aside the failure to raise some aspects of his argument below, the evidence produced at trial was more than adequate to demonstrate that Strausbaugh had produced child pornography, possessed child pornography images, and distributed child

---

[4]    Strausbaugh's counsel did argue that some of the pictures, such as those depicting children in a bath tub, could not be child pornography and argued that they could be the type put in any family photo album,. At no time did he direct this argument specifically to the Canada picture, and it stretches credibility to claim that this photograph—a close-up of an infant's naked vaginal area—is the type of snapshot commonly put into a family photo album.

pornography images. Indeed, he admitted to doing so in response to the very first question posed to him upon his taking the stand in his own defense:

> (Strausbaugh's Counsel):    Thank you. Mr. Strausbaugh, let's get this out of the way first. You did in fact do the things that were charged in the indictment against you insofar as the concerns taking pictures of [Strausbaugh's eight-month-old niece].
>
> (Strausbaugh): Yes.

App. 387A. The only limiting qualification on this admission was a follow-up exchange where Strausbaugh admits that he did not know anything about "interstate commerce" or "search and seizure" but again admits that he took the pictures in question. *Id.*

Throughout his testimony, Strausbaugh would again admit to every aspect of his crimes. He admitted to sending the picture to Canada. App. 392A. He admitted to trading other pictures on the internet. App. 392A, 412A. He admitted to collecting child pornography. App. 392A. He admitted to taking pictures of his niece on at least four occasions. App. 404A-405A. He admitted to taking pictures of his niece while his wife stretched his niece's legs and labia open. App. 407A. He admitted to photographing his penis up against his niece in at least one photo. App. 407A, 411A-412A.

In addition to his admissions at trial, Strausbaugh admitted during his interview on the day of the search warrant that it was his niece that was featured in the images, that he had taken the photos, that it was his and his wife's hands that were occasionally seen spreading the infant's legs and labia and that it was his penis pressed against his niece's labia. App. 206A-207A, Government trial Exhibit 74b. He also admitted to storing the photos, masturbating to them, sending some of the photos to other people via the *wantmelittle* email address and uploads to a website, and doing so in the hope of getting pictures in return. *Id.* In short, both on the stand at trial and in questioning by investigators, Strausbaugh admitted to producing child pornography images, possessing child pornography images, and distributing child pornography images, and thus his claim now that the government failed to prove that he did so is absurd.

Strausbaugh's attempt to characterize the photos for which he was convicted as "silly" "precious moments" that were merely personal pictures are undermined both by the above admissions and the pictures themselves. The application of the *Dost* factors as they related to the photograph sent to Canada has already been discussed above in

Argument Section II(B)(1) and will not be repeated here, but an analysis of the other photos and videos found in the search of his home using the *Dost* factors only makes matters worse for Strausbaugh.

At trial, a wide variety of pictures of Strausbaugh's infant niece seized during the search were entered into evidence, and they easily fit into four separate categories for any *Dost* analysis. The first category of photographs consist of pictures of Strausbaugh's niece, naked from the waist down, where her vaginal area is visible, but not necessarily the focus of the photograph. Government trial exhibits 6-10, 13, 18. For this category only two of the *Dost* factors are arguably present: the partial nudity and the intent to generate a sexual response in the viewer, since Strausbaugh admitted to masturbating to his photos and sending some of them to other people via the *wantmelittle* email address and uploads to a website in the hope of getting pictures in return. App. 206A-207A, Government trial Exhibit 74b.

The second category of photographs includes those similar to the photograph sent to Canada. They include pictures of Strausbaugh's niece where she is nude from the waist down, posed almost always on her back with legs spread, such that her vaginal area is the focus of the

photograph, and in many instances camera placement or zoom is used to get very close to that area. In almost all of the photos the niece's face is obscured or cut-off. Government trial exhibits 12, 14-17, 19-22, 26-27, 40-42, 46-53, 54-55.

Here in addition to nudity and Strausbaugh's admitted intent to elicit a sexual response, the photographs also possess the *Dost* factors of a focus on the genital area and, to a certain extent, a sexual pose as the niece is depicted with legs spread wide, laying on a couch and only rarely is anything associated with a diaper change present.

The third category of photographs consists of pictures where camera placement or zoom is used to focus closely on the infant niece's vaginal area, she is again naked from the waist down, almost every part aside from the vaginal area is obscured or cut off from view, and a hand or hands belonging to either Strausbaugh or his wife are engaged in spreading (and in some cases visibly stretching) the infant niece's labia wide open. Government trial exhibits 23-25, 28-33, 43-45, 52.

As to these photographs, there can be no dispute that almost every *Dost* factor is present. The focal point is the genital area, the photos are sexually suggestive, the pose is unnatural, the victim is partially nude,

and Strausbaugh has admitted to his desire to elicit a sexual response from them.

Finally there are two pictures that depict Strausbaugh's penis pressed against his niece's genital area. Government trial exhibits 34,35. Once again there can be no dispute that almost every *Dost* factor is present. The focal point is the genital area, the photos are sexually suggestive, the pose is unnatural, the victim is partially nude, and Strausbaugh has admitted to his desire to elicit a sexual response from them.

In short, Strausbaugh's argument that these photographs were simply "silly" "precious moments" that are mere "personal pictures" is a gross mischaracterization of the actual contents of the photographs, and any claim that, despite the production of these photos, the government failed to show that the pictures of his niece in question were child pornography is simply absurd.

In addition, and with regard to the possession charges Strausbaugh was convicted of, the government produced additional pictures and a single video seized from Strausbaugh's home that depict child pornography. The video produced clearly depicts an underage girl

performing oral sex on a male. Government trial exhibit 61. One picture depicts a naked underage girl performing oral sex on an underage boy. Government trial exhibit 62. Another depicts a naked young girl performing oral sex on a male of unknown age. Government trial exhibit 63. Another photo depicts an underage girl naked from the waist down laying on the floor while a dog licks her exposed vaginal area. Government trial exhibit 64. Another photo depicts a young naked girl sitting blindfolded as she is made to grasp an erect male penis. Government trial exhibit 65. Another image depicts an underage girl performing an oral sex act on a younger, unclothed girl. Government trial exhibit 66. Two more pictures depict male penises pressed up against the nude vaginal area of infant girls, and in one of the photos it appears as if the penis has ejaculated. Government trial exhibits 67-68. Another photo shows a young girl poking her naked vaginal area with a finger. Government trial exhibit 69. Finally, three photographs depict young girls' nude vaginal areas in close-up, in one photo with the labia spread wide. Government trial exhibits 70-72.

As a review of the above shows, the government produced numerous examples of child pornography that was in Strausbaugh's

possession – and that he admitted possessing –, and thus any claim that the evidence was insufficient lacks any basis.

Finally as to the nature of the photos, Strausbaugh relies on the testimony of a state trooper who was involved in the execution of the search warrant where Strausbaugh claims he "did not relate any photograph contained on the camera as what would be considered child pornography." Strausbaugh Br. at 21. This is a blatant mischaracterization. The trooper's actual testimony was that he could not identify child pornography images at the time *through the camera's user interface*. App. 336A. Nonetheless, he was still able to retrieve images taken with the camera, but subsequently deleted from it, which remained on the memory card, and these included the images of Strausbaugh's niece described above. App. 311A-312A, 322A-336A. This corroborates Strausbaugh's own admission that he deleted the pictures in question from the camera and transferred them to his computer. App. 429-430A.

## B. *Evidence of an interstate nexus.*

Strausbaugh's next argument pertains to an alleged failure on the part of the government to show that there was a nexus to interstate commerce in his case as no sale or purchase took place, and thus there was no effect on interstate commerce. Strausbaugh Br. at 20-21.

The test Strausbaugh seeks to apply to his case is simply the wrong one, and the applicable case-law makes clear that the government met its burden as to an effect on interstate commerce in a number of different ways.

First, there was no dispute that the Konica Minolta Dimage camera seized during the search was the same one that was used to take the photographs of Strausbaugh's niece – indeed Strausbaugh admitted as much at trial and when he was interviewed during the search of his home. App. 437A-438A. This camera matched the EXIF data pulled from the Canada photo, and also contained memory card that maintained the remnants of the digital photographs of Strausbaugh's niece. App. 191A-193A, 206A-207A, 311A-312A, 322A-336A, Government trial Exhibit 74b. There was also no dispute that

this camera was manufactured in Korea. App. 191A-192A,

Government's trial exhibits 86-f, 87.

As this Court and other Circuit Courts of Appeal have repeatedly

held, the interstate commerce jurisdictional "hook" contained in the

federal statutes outlawing possession, creation, and distribution of child

pornography is satisfied if it is shown that at least some

instrumentality or material used in the creation of the pornography

traveled in interstate commerce at some time. *See United States v.*

*Galo*, 239 F.3d 572, 575-576 (3d Cir. 2001) (citing *United States v.*

*Rodia*, 194 F.3d 465 (3d Cir. 1999); *see also United States v. Ramos*, 685

F.3d 120, 132-133 (2d Cir. 2012) (cataloging cases). Since it was

undisputed at trial that Strausbaugh used the Korean-made camera in

photographing his niece, this element was satisfied beyond a reasonable

doubt.

Second, inasmuch as he challenges the potential interstate

commerce connection with regard to his distribution count,

Strausbaugh admitted to emailing the Canada photo, as well as

uploading other images to other websites in the hopes of facilitating

trades for images. App. 206A-207A, 392A, 412A, Government trial

Exhibit 74b. As this Court has previously held, "because of the very

interstate nature of the internet, once a user submits a connection

request to a website or an image is transmitted from the website server

back to user, the data has traveled in interstate commerce." *United*

*States v. MacEwen*, 445 F.3d 237, 244 (3d Cir. 2006). While the

*MacEwen* decision was focused on a conviction for receiving child

pornography, the same reasoning would clearly apply to those

distributing child pornography. Indeed, Strausbaugh's attorney as good

as conceded that the emailing of the photo to Canada could be a basis

for finding an interstate commerce nexus at trial. App. 363A-364A.

   For these reasons there was sufficient evidence to uphold the

convictions on all charges.

### V.   Strausbaugh's 45-year sentence on his five child pornography and sexual exploitation of a minor convictions did not constitute cruel and unusual punishment.

As his final argument on appeal, Strausbaugh asserts that his

sentence should be overturned as it lacks the proportionality to his

crimes that it is required to ensure that is not cruel and unusual

punishment. Strausbaugh Br. at 23-25. As will be discussed below, such

an argument collapses upon review of the crimes Strausbaugh was

convicted of, the statutory provisions for those crimes, the calculations contained in his Pre-Sentence report, and a comparison to other convicted on child pornography charges.

As an initial matter, Strausbaugh's claim that he was convicted simply because he "took pictures of his niece while being changed," (Strausbaugh Br. at 24), is a massive understatement. The EXIF data attached to the pictures in questions established that Strausbaugh took pictures of his niece's naked vaginal area on multiple occasions, at times with either he or his wife spreading her legs wide for the photographs, at times spreading her labia to the point of the flesh appearing stretched, and in at least two photographs pressed his erect penis against her labia. App. 207A, 221A-245A, Government Trial Exhibits 1-60. This is a far cry from simply "taking pictures of a niece while she was being changed."

Moreover, Strausbaugh was convicted of distributing some of these images, as well as the possession of additional child pornography. In total he was convicted of three counts of sexual exploitation of a child in violation of 18 U.S.C. § 2251, one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of

possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(b). App. 5A.

For each count of conviction under § 2251, Strausbaugh faced a mandatory minimum sentence of 25 years and a maximum of 50. 18 U.S.C. § 2251(e). For his conviction under 18 U.S.C. § 2252, he was subject to a mandatory minimum sentence of at least 15 years, and a maximum of 40. 18 U.S.C. § 2252(b)(1). Finally, for his conviction under 18 U.S.C. § 2252A, Strausbaugh faced a mandatory minimum of 10 years and a maximum of 20. 18 U.S.C. § 2252A(b)(2). As a result, for his five convictions Strausbaugh faced a possible statutory maximum sentence of 210 years, and had the minimums been run consecutively they would have totaled 100 years of incarceration.

Strausbaugh's Sentencing Guidelines also provided for significant punishment by virtue of his five convictions resulting in an offense level of 43, and his criminal history amounting to a category V. PSR ¶ 93. Combined, this resulted in an advisory guideline sentence of life imprisonment. *Id.*

This Court has previously stated, a sentence that falls within the limits imposed by a statute is neither excessive nor cruel and unusual.

*United States v. Miknevich*, 638 F.3d 178, 187 (3d Cir. 2011). This is because this Court affords substantial deference to Congress and its authority to determine the types and limits of punishments for particular crimes. *Id.* As a result, successful challenges to the proportionality of non-capital sentences will be exceedingly rare. *Id.*(quoting *Solem v. Helm*, 463 U.S. 277, 289-90 (1983)). In this case, Strausbaugh's 45-year sentence on his five separate convictions amounted to roughly 21% of the potential maximum sentence that could have been imposed under the statutes of conviction and was less than half the statutory minimum that could have been imposed if he was given consecutive sentences. As such, his claim that his sentence was excessive, cruel or unusual is simply not accurate.

The two cases Strausbaugh cites in support of his argument, in truth, fail to support his claim at all. In *United States v. Kane*, 470 F.3d 1277 (8th Cir. 2006), the defendant was convicted of only two crimes, and neither of them matched any of Strausbaugh's convictions – conspiracy to commit aggravated sexual abuse, and aggravated sexual abuse. *Id.* at 1279. The defendant in *Kane* also had no criminal history. *Id.* at 1281-82. As a result attempting to draw parallels between that

case and Strausbaugh's is irrelevant. In addition, the 120-month sentence ultimately imposed on Kane by the district court that Strausbaugh wishes this Court to consider as being more reasonable was ultimately vacated as being unreasonably low on two separate occasions. *Id.* at 1282; *United States v. Kane*, 639 F.3d 1121, 1137.

Similar problems plague Strausbaugh's reliance on *United States v. Ivey*, 612 F.3d 1160 (11th Cir. 2012). In Ivey the defendant was convicted of only a single count of using minors to engage in sexually explicit conduct outside the United States in violation of 18 U.S.C. § 2251(c). *Id.* at 1168. This conviction carried a statutory maximum sentence of 30 years in prison, while the Guidelines called for a term of life, but Ivey received only 210 months' imprisonment. *Id.* at 1169, 1178-79. Once again, any attempt to equate Strausbaugh's five convictions to this single conviction of a different crime lacks a rational basis and is further undermined by the fact that, as in *Kane*, the sentence imposed on Ivey was ultimately vacated as being too lenient. *Id* at 1208-09.

A comparison of cases involving the same statutes of conviction as Strausbaugh's (and in some cases, similar numbers of them) reveals

nothing cruel and/or unusual about his 45-year (540 month) sentence.

For example, in the *Miknevich* case cited earlier, a sentence of 151

months on a conviction of mere possession of child pornography was

upheld by this Court. *Miknevich*, 638 F.3d at 186. The Second Circuit

has upheld a 180-month sentence for possessing and receiving child

pornography. *United States v. Ramos*, 685 F.3d 120, 134 n. 11 (2d Cir.

2012).

In cases involving multiple counts, and counts of production

and/or distribution of child pornography, cases have regularly exceeded

the 45 years sentence that Strausbaugh claims is excessive. In *United

States v. Paton*, 535 F.3d 829 (8th Cir. 2008), the Eighth Circuit upheld

a life sentence for five convictions of production of child pornography. *Id*

at 837-38. In *United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) the

Eleventh Circuit upheld a 100-year sentence on three convictions of

sexual exploitation of a minor and one conviction of possession of child

pornography. *Id.* at 1220 (citing numerous additional cases involving

child pornography sentences).

For these reasons, Strausbaugh's claim that his 45-year sentence

on his five sexual exploitation of a minor and child pornography related

convictions amounts to cruel and unusual punishment should be rejected and his sentence affirmed.

## CONCLUSION

For all these reasons, the United States of America respectfully requests that this Honorable Court affirm the judgment and sentence of the district court.

PETER J. SMITH
United States Attorney


STEPHEN R. CERUTTI II
Assistant United States Attorney
Chief, Criminal Appeals
United States Attorney's Office
Middle District of Pennsylvania
Ronald Reagan Federal Building
Suite 220
228 Walnut Street
Harrisburg, Pennsylvania  17108
717-221-4482

## CERTIFICATE OF COUNSEL

I, Stephen R. Cerutti, certify that I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

/s/ Stephen R. Cerutti II
STEPHEN R. CERUTTI II
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief consists of 12,349 words and does not exceed the 14,000 word limit.

/s/ Stephen R. Cerutti II
STEPHEN R. CERUTTI II
Assistant U.S. Attorney

## IDENTICAL PDF & HARD COPY CERTIFICATE

The undersigned hereby certifies that the PDF file and Hard Copies of this brief are identical.

/s/ Stephen R. Cerutti II
STEPHEN R. CERUTTI II
Assistant U.S. Attorney

## VIRUS SCAN CERTIFICATE

This e-mail and the attached brief has been automatically scanned during preparation and upon sending by the following virus detection programs: OfficeProtect/Inoculan, ScanMail, and Viruswall, and no viruses were detected.

/s/ Stephen R. Cerutti II
STEPHEN R. CERUTTI II
Assistant U.S. Attorney

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,       )       No. 12-2434
                                )
              Appellee          )
                                )
      v.                        )
                                )
MICHAEL STRAUSBAUGH             )
                                )
              Appellant         )

## CERTIFICATE OF SERVICE

The undersigned certifies that she has this date, **May 2, 2013,** served two copies of the foregoing **Brief of Appellee** by first class mail postage prepaid as follows:

Brett J. Riegel, Esquire
ANDERS, RIEGEL & MASINGTON, L.L.C.
18 North 8th Street
Stroudsburg, PA 18360

/s/ Cindy J. Long
CINDY J. LONG
Legal Assistant