In The United States Court Of Appeals  T/w

For the Third Circuit

$\overset{R5}{\text{AUG } 27 \ 3}$

United States of America   :
          Appellee          :
                            :    Case No. 12-2434
    V.                      :
                            :
Michael Strausbaugh         :
          Appellant.        :

---

August 21, 2013

## Motion to the Cheif Justice for En-Banc Rehearing

Comes now, Michael Strausbaugh, Pro-se in the above captioned cause, and Moves this Honorable Court with a Motion to the Cheif Justice for En-Banc Rehearing based on the following facts:

Strausbaugh filed a pro-se motion to terminate Counsel and appoint new counsel, which was denied by this Honorable Court. Subsequently Strausbaugh filed Notice of Pro-se Apperance and termination of Counsel to no avail. Strausbaugh has Submitted sufficent proof to this court that Counsels actions were not of an advocate and Strausbaugh's appeal was not being adjudicated in accord with Due Process as would be required by Evetts v. Lucey 469 US 378, 396 (1985) as Counsels loyalty seems to be directed to the United States.

-1-

Strausbaugh's appointed Counsel, Reigel refused to submit a Reply Brief and this Court never responded to Strausbaugh's Notice of Pro-se appearence of Record and termination of Counsel Reigel, which is premitted in accordance with Indian v. Edwards 171 L.Ed. 2d 345, 128 S.Ct _ (2008) Which had an adverse effect on the out come of this Appeal in Violation of the Due Process Clause of the Fifth amendment of the United States Constitution.

Wherefore, premises considered, Strausbaugh respectfully request this Honorable Court to Grant an En-Banc Rehearing based on the information within the Brief in Support of a Rehearing, ~~as the Reply~~ To also include this Brief in support of a Rehearing as the Reply Brief to the Governments Brief in the event of a Rehearing.

Respectfully Submitted, on this the 21st day of August, 2013

Michael Strausbaugh, 69878-067
United States Penitentiary, Tucson
Post Office Box 24550
Tucson, Arizona 85734

## Certificate of Service

I hereby certify that I have served a true copy of the forgoing uppon counsel, U.S. Attorneys Office, Stephen R. Cerutti II, 228 Walnut St. Ste:220, Harrisburg PA. 17108. on the 21st Day of August 2013

Michael Strousbaugh Reg No 69878-067
United States Penitentiary, Tucson
Post Office Box 24550
Tucson Arzona 85734

IN THE UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

NO. 12-2434

UNITED STATES OF AMERICA,

APPELLEE,

VS

MICHAEL J. STRAUSBAUGH,

APPELLANT.

APPEAL FROM A FINAL JUDGMENT OF CONVICTION AND SENTENCE

OF THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

( CALDWELL, J. )

CR. CASE NO. 1:11-CR-0096

APPELLANTS PRO-SE ▮▮▮▮ BRIEF

[ PRO-SE ]

MICHAEL J. STRAUSBAUGH. REG.NO. 69878-067

UNITED STATES PENITENTIARY, TUCSON

POST OFFICE BOX # 24550

TUCSON, ARIZONA.                    85734

## TABLE OF CONTENTS

|  |  |  |
|---|---|---|
| Table of Content | Pg: | ii |
| Table of Authorities | Pg: | v |
| Statutes Cited | Pg: | viii |
| Constitutional Provisions | Pg: | viii |
| Treaty Law | Pg: | ix |

| I. | NOTICE OF RECORD DISCREPANCIES | Pg: | 1 |
|---|---|---|---|
| (a) | Misrepresentation of Alex vs | Pg: | 1 |
|  | Alexandra Strausbaugh |  |  |
| (b) | Hard Drive | Pg: | 1 |
| (c) | Sentencing: Criminal history Category | Pg: | 2 |
| II. | KASTIGAR VIOLATIONS | Pg: | 2 |
| III. | DOST FACTORS | Pg: | 2 |
| (a) | Third Circuit Precedent of Dost |  |  |
|  | Factors | Pg: | 2 |
| (b) | Dose Factors based on Canada |  |  |
|  | Email/Picture | Pg: | 3 |
| (c) | Dost Factor 1. [Focus] | Pg: | 3 |
| (d) | Dost Factor 2. [Sexually Suggestive Pose] | Pg: | 4 |
| (e) | Dost Factor 3. [Unnatural Pose] | Pg: | 5 |
| (f) | Dost Factor 4. [Requirements] | Pg: | 5 |
| (g) | Dost Factor 6. [Intent of Picture] | Pg: | 6 |
| (i) | Email Intent of Picture | Pg: | 6 |
| (ii) | Picture Intent | Pg: | 8 |

( ii )

IV.    FOURTH AMENDMENT AND PROBABLE CAUSE.......Pg:    8

   (a)  Magistrates Determination vs.

        Officers Beliefs ........................Pg:    8

   (b)  Magistrates Observation of Evidence ......Pg:   10

   (c)  Good Faith Exception ....................Pg:   12


V.     INSUFFICIENT EVIDENCE/ ACQUITAL ..........Pg:   14

   (a)  Ends of Interstate Commerce Character.....Pg:   14

   (b)  Pictorial Evidence Preserved for

        Appellate Review........................Pg:   15

   (c)  Fictious Evidence........................Pg:   17

        (i)    Distributing......................Pg:   17

        (ii)   Uploading.........................Pg:   18

        (iii)  Canada Email and Photo ............Pg:   18

        (iv)   Government Concedes insufficient

               Evidence .........................Pg:   19


VI.    INAPPROPRIATE CONSIDERATION OF EVIDENCE ..Pg:   20

   (a)  Video; Excluded at Trial [Exhibit-61].....Pg:   20

   (b)  Photos; Excluded at Trial [Exhibits 62-72]Pg:   20

   (c)  Exhibits 61-72, Not Charges in

        Indictment ..............................Pg:   21


VII.   INTERSTATE COMMERCE JURISDICTION..........Pg:   22

   (a)  Governments Contentions .................Pg:   22

   (b)  Effects on Economical Market.............Pg:   22

   (c)  Items that Traveled in Interstate

        Commerece at One Point In Time...........Pg:   28

   (d)  Non Existent Uploading Evidence by...

Government...............................Pg:  31

  (e)    Non Illicit Canada Photo.................Pg:  31


VIII.   CRUEL AND UNUSUAL PUNISHMENT..............Pg:  32

  (a)    Inappropriate use of Enhanced

        Statutory Minimum and Maximums...........Pg:  32

  (b)    Proportionality..........................Pg:  33


IX.     MUTUAL LEGAL ASSISTANCE TREATY

        BETWEEN CANADA AND THE UNITED STATES......Pg:  34

  (a)    The MLAT Argument is not to Suppress

        Evidence.................................Pg:  34

  (b)    The MLAT can be Challenged ...............Pg:  37


X.      CONCLUSION...............................Pg:  38

  (1)    MLAT Infraction..........................Pg:  38

  (2)    Warrants and Probable Cause .............Pg:  38

  (3)    Subsequent Evidence .....................Pg:  39

  (4)    Jurisdiction.............................Pg:  39

      (a)    Economic Market .....................Pg:  39

      (b)    Items that had Traveled in Interstate

           Commerce.............................Pg:  39

      (c)    Email Correspondence ................Pg:  39

  (5)    Insufficiency of the Evidence/

        Acquittal................................Pg:  39

  (6)    Cruel and Unusual Punishment ............Pg:  40


XI.     Relief...................................Pg:  40

        Certificate Of Service...................Pg:  43

## TABLE OF AUTHORITIES

Aguilar v. Texas

     37, US 108, L.Ed. 1071 (1964) ...................Pg:   8

Anderson v. Shipowners Anns.

     272 US 359, 71 L.Ed. 298, 47 S.Ct. 125 ..........Pg:   15

Faloona v. Hustler Magazine Inc.

     607 F.Supp. 134 (N.D.Tex 1995) ..................Pg:   20

Franks v. Delaware

     438 US 154, 155-56, 171-72 (1978) ...............Pg:   13

Giordenello v. United States

     357 US 480, 2 L.Ed. 1503, 78 S.Ct. 1245 .........Pg:   9

Gonzales v. Raich

     545 US 1, 125 S.Ct. 2195, 162 L.Ed.2d, 1

     (2005) ..........................................Pg:   22

Graham v. Florida

     130 S.Ct 2011, 2021 (2010) ......................Pg:   33

Johnson v. United States

     333 US 10, 14, 92 L.Ed. 436, 440, 68 S.Ct. 367 ...Pg:   9

Jones v. United States

     362 US 257, 270, 4 L.Ed. 607, 708 ...............Pg:   9

Morrison v. United States

     529 US 589, 120 S.Ct. 1740

     146 L.Ed.2d 658 (2000) ..........................Pg:   24

Nathanson v. United States

     209 US 41, 78 L.Ed. 259, 54 S.Ct. 11 ............Pg:   9

New York v. P.J. Video Inc.

     475 US 868, 874 (1986) ..........................Pg:   10

Sale v. Haitian Centers Counsel .....

125 L.Ed.2d 128, 509 US 155, 191 (1993).........Pg: 35

Sumitomo Shoji America Inc. v. Avaglian

176, 185, 72 L.Ed.2d 765, 120 S.Ct. 2347 (1982)..Pg: 36

Texas v. Anderson Clayton & Co.

302 US 747, 82 L.Ed. 578, S.Ct. 265.............Pg: 15

United States v. Alkhabaz

104 F.3d 1492 (6th Cir. 1997)...................Pg: 28

United States v. Codero

668 F.3d 1051, 28 V.I. 375 (3d Cir. 1983)........Pg: 37

United States v. Dost

636, F.Supp. 828 (S.D. Cal 1997)................Pg: 2

United States v. Employing Plasterers

98 L.Ed. 618, 347 US 186 .......................Pg: 15

United States v. Freeman

239 US 117, 60 L.Ed. 172, 36 S.Ct. 32, 1915......Pg: 14

United States v. Galo

239, F.3d 572 (3d Cir. 2001)....................Pg: 32

United States v. Hill

459 F.3d 966 (9th Cir. 2001)....................Pg: 2

United States v. Irey

612 F.3d 1160 (11th Cir. 2012)..................Pg: 33

United States v. Jones

994 F.2d 1051, 28 V.I. 375 (3d Cir. 1983)........Pg: 13

United States v. Kane

470 F.3d 1277, (8th Cir. 2006) ..................Pg: 33

United States v. Kemmerling

283 F.3d 644 (CA8 Iowa 2002) ...................Pg: 8

United States v. Lafortune

520 F.3d 50, 56 (1st Cir. 2008) ................Pg: 11

United States v. Larkin

     629 F.3d 177 (CA3 PA 2010)........................Pg: 3

United States v. Lopez

     514 US 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 .....Pg: 22

United States v. MacEwen

     445 F.3d 237, 244 (3d Cir. 2004)................Pg: 18

United States v. Maxwell

     386 F.3d 1042 (11th Cir. 2004)..................Pg: 23

United States v. Maxwell

     542 US 801, 1126 S.Ct. 321

     163 L.Ed. 2d 29 (2005)..........................Pg: 23

United States v. Mikenvich

     638 F.3d 178 (3d Cir 2011)......................Pg: 10

United States v. Reed,

     639 F.2d 896 (2d Cir. 1999)....................Pg: 37

United States v. Rivera

     546 F.3d 252 (2d Cir. 2008) ...................Pg:  3

United States v. Rodia

     194 F.3d 465 (3d Cir. 1999) ...................Pg: 22

United States v. Smith

     402 F.3d 1303 (11th Cir. 2005)..................Pg: 23

United States v. Smith

     545 US 1124, 125 S.Ct. 2929

     162 L.Ed.2d 863 (2005)..........................Pg: 23

United States v. Stuart

     489 US 353, 371 103 L.Ed.2d 388

     109 S.Ct. 1183 ................................Pg: 36

United States v. Wiegand

     812 F.2d 1239, 1245 (8th Cir. 1987).............Pg:  7

Wickard v. Filburn

          317 US 111, 63 S.Ct. 82

          87 L.Ed. 112 (1992) ......................... Pg:  24

Zicherman v. Korean Airlines Co.

          596 US 217, 226, 133 L.Ed.2d (1996)............Pg:  38

## STATUTES CITED

Effective Child Pornography Act Oct. 8, 2008

          P.L. 110-358, Title 1 § 102, 122 Stat. 4001.....Pg:  26

18 U.S.C. §  875(C)....................................Pg:  29

18 U.S.C. § 2251 ......................................Pg:  25

18 U.S.C. § 2252 ......................................Pg:  25

18 U.S.C. § 2252 A ....................................Pg:  25

18 U.S.C. § 2256(2)....................................Pg:   8

18 U.S.C. § 2256(2)(E) ................................Pg:   8

18 U.S.C. § 2256(8)....................................Pg:   8

28 U.S.C. § 2072.......................................Pg:  27

28 U.S.C. § 2241(a)(c)(3) .............................Pg:  27

## CONSTITUTIONAL PROVISIONS

Article 1 § 8 Clause 3 ................................Pg:  26

Article 2 § 2 .........................................Pg:  38

Fourth Amendment ...................................Pg: 3, 13

Fifth Amendment ...................................... Pg:  13

Ninth Amendment.......................................Pg:  27

## TREATY LAW

Mutual Legal Assistance Treaty.........................Pg:  34

Article 31.1 Vienna Convention Law of Treaties

      1151 UNTS 331, 70 NO. 58 (1980)................Pg:  35

Article 32 Vienna Convention Law of Treaties

      115 UNTS 340, 8 ILM 629 .......................Pg:  36

## I. Notice of Record Discrepancies.

### a.)  Misrepresentation of Alex Vs. Alexandra Strausbaugh

Starting with an incorrect citation of Alex Strausbaugh in Government Brief Pg:9. When compared to the actual document the Government cites (App. 46(a)), Alexandra Strausbaugh is the correct citation. The Government changes Alexandra to Alex in the brief to better support the citing of Alex Strausbaugh@gmail.com above on Government Brief Pg:9. This needs to be noticed.

### b.)  Hard Drive

On Pg:10, the Government starts an explanation about preliminary examination of the camera and memory card and continues on to also include the hard drive on Pg:11 Government Brief "as an examination of other electronic devices revealing the same photo and additional child porn images and video." In this instant case the hard drive was not seized in the initial search, subsequently, it was removed from my property by a 15 year old girl Elizabeth Shugar (App.200(a) Ln:5 - Ln:11) and placed them into a truck that Josh Nace had that was originally Strausbaugh's. Josh supposedly signed a written consent to search (App.201(a) Ln:10 - Ln:12). This information should be investigated as to whether there was a search and seizure violation concerning these hard drives (blue & green). Within the recorded telephone conversation between Strausbaugh and Josh Nace and Attorney West's records that the hard drive was stored in Josh Nace's safety deposit box. Now in the trial record the Government introduced he had it in the truck. Josh has currently been indicted for withholding evidence.

## c.)  Sentencing: Criminal History Category

Pg:17 Government Brief it states "offense level was determined to be 43 and his criminal history category set at V (PSR ¶ 64, 70). There needs to be a clarification as to my criminal history category and why it is V, because I only have one misdemeanor that would qualify me for criminal history category of I. (see PSR)

### II. Kastigar Violations.

In the Government Brief Pg:16, it states "Strausbaugh also admitted sending the pictures...and to trading his pictures,on the internet roughly eight to a dozen times". (App. 391(a) - 392(a), 412(a)) Also in Government Brief Pg:51, "He admitted to trading other pictures on the internet." (App.392(a), 412(a)) These both were violations of the Kastigar letter signed by Jim West, US Attorney and my self as the information was divulged during a proffer session with Cor-ecelli, Jim West and myself for a potential 5k1. Therefore this information should have never been a part of the trial nor the Government Brief.

### III. Dost Factors.

## a.)  Third Circuit Precedent of Dost Factors

Government Brief Pg:30 - Pg:32, determining Lascivious Nature of the Canada photo. Government Brief Pg:30,31 states Strausbaugh focuses on the 6-Factors spelled out in United States V. Dost, 636 F.Supp 828(SD.CA.1986). The Government claims these factors are "neither exclusive or conclusive"; citing United States V. Hill,459 F.3d 966(9 Cir.2006);(quoting Wiegand,Supra, at1245). Also claiming reliance on Dost to a Mathematical certainty or relying on such exclusively is

- 2 -

not required. <u>United States v. Rivera (2d.Cir.2008)</u> These
cases the Government cites are from the 9th and 2nd Circuit,
and are only persuasive case law from 2009 and older. The
Government fails to recognize the 3rd Circuit precedent set in
<u>United States v. Larkin (2010 CA3 PA) 629 F.3d 177</u> citing
<u>United States v. Dost</u>, where the 3rd Circuit Court of Appeals
relies solely on the six factors set forth in Dost for
determining whether the pictures in Larkin qualify as
lascivious.

However the Government relies on <u>Rivera 546 F.3d at 252</u>
Government Brief Pg:32 to argue the diminished utility of Dost
factors for the purpose of 4th Amendment analysis, again only
persuasive case law and not the 3rd Circuit precedent.

<u>b.)</u>  <u>Dost factors based on Canada email/picture</u>

Government Brief Pg:32, they state that the email
correspondence in Canada reveals that it meets multiple Dost
factors, thus a "substantial basis" supporting the issuance of
a warrant. The multiple Dost factors the Government claim the
Canada picture meets are factors 1,2,3,4, & 6. I will address
them in order.

<u>c.)</u>  <u>Dost Factor 1 [Focus]</u>

Factor 1: The Government claims the focus of the photo
can be of little doubt, that it is the 8-month old victim's
genital or pubic area and describes this photo, aggrandizing
the facts stating that "her legs are spread wide, and the
camera is close enough or zoomed in enough...The victim's face
is obscured by a bib that has been raised over it, but given
the framing of the photo, parts of the victim's face may have
been cut off by the photograph anyway" (Trial Exhibit 1), thus

improperly describing the photo. Within the application for a
search warrant, (App. 43(a)), Detective Krawczyk who opened
the attachment to the Canada email (Pict0321) describes the
Canada photo as "impertinent part. Her legs are spread and the
clear focus of the image is on her vaginal area. The baby
appears to have a bib on and this bib is lifted over her
face." The 3rd Circuit Court will have to analyze the Canada
photo (Pict0321), however, this picture as conceded by the
Government is a full body picture of an infant from her feet
to her head. (Government Brief Pg:32) Also conceded was "her
pubic area was in the center of the photo". Considering the
genital or pubic area of a human body is naturally within the
middle of the body, the Government claiming that this is the
central focus is completely absurd.

d.)  Dost Factor 2 [Sexually Suggestive Pose]

    Factor 2: The Government states that "the pose 'could
certainly be viewed as sexually suggestive'". Factor 2
requires a place or pose generally associated with sexual
activity. The Government admits that a living room couch is
not necessarily a sexually suggestive place, relying on the
infant's pose as being one generally associated with sexual
activity. Again the Government improperly describes the Canada
photo "lying naked" on her back, naked from the waist down,
with her legs "raised and spread apart", conceding only that
this "could" certainly be considered to be in a sexually
suggestive pose. When the Government chooses the word "could"
to describe if the picture can be considered sexually
suggestive, it shows doubt. The definition of could is
"expressing a shade of doubt" (Webster's New World Dictionary

- 4 -

2nd Edition) Therefore, another factor that the Canada picture
(Pict0321) does not fit. An infant lying on her back on a
couch in the living room naked only from the waist down with
her socks still on is more consistent with Strausbaugh's
explanation  of diaper changing. For the Government to contend
an infant in this position as being sexually suggestive is
preposterous.

e.)  Dost Factor 3 [Unnatural Pose]

Factor 3: Factor 3 requires the child to be depicted in
an unnatural pose or in inappropriate attire, considering the
age of the child. The Government admits, as to the Third
Factor, "that an 8-month old will regularly be lying on her
back naked from the waist down with legs up during diaper
change", further supporting Factor 2, that an infant in that
position is not sexually suggestive. The Government only notes
that, there is no diaper present anywhere, nor any evidence
that a diaper change was under way. As the Government concedes
in their explanation of Factor 1, the picture is from her feet
to her head, the frame therefore would not be wide enough to
see baby wipes, a fresh diaper or the dirty diaper that was
removed. As to the requirement of Factor 3, the Canada photo
does not meet either the unnatural pose or inappropriate
attire, is entirely a natural position considering the age of
the child and the explanation of diaper changing.

f.)  Dost Factor 4 [Requirements]

Factor 4: Factor 4 as the Government states is
undoubtedly met as the infant is naked from the waist down.
However, Strausbaugh wishes to note that there are three
requirements: fully clothed, partially clothed, or nude, and

- 5 -

any and all photographs produced would unquestionably meet one
of these requirements. Therefore, every photo imaginable would
qualify for Dost Factor 4.

g.) Dost Factor 6 [Intent of Picture]

Factor 6: Finally, Factor 6 is the consideration of
whether the photograph was designed to generate a sexual
response in the viewer.

(i) Email intent of picture

The Government relies on the email exchange between
Strausbaugh and Trumbley in Canada. To say "I have some good
pics nude of 8 month old niece  let ne [sic] know if you want
to trade if you have nude." (App.42(a)) Trumbley responded
"yes I've got lots of nudes, let's see a preview". Strausbaugh
responding, "here's a preview send some back I will send set I
like personal pics" Attached to this response was the photo
discussed above. (App.43(a))

These three brief emails transponded over 12 hours on
Feb. 5, 2011, starting with the first email sent by
Strausbaugh at 4:30 a.m. Trumbley responded at 7:22 a.m. and
Strausbaugh sending Pict 0321 at 4:49 p.m. The final email was
sent by Trumbley the following day Feb. 6th, 2011 at an
unidentified time.

This would be the only email the Government could
potentially rely on since the emails Strausbaugh sent only
suggest nudity and personal pictures. No email sent by
Strausbaugh advised or directed Trumbley's attention to view
the genitals or any specific part of the body, nor do they
suggest viewing for sexual pleasure as required to meet the
requirements of Factor 6 "designed to generate a sexual

response in the viewer."

In light of the final response sent Feb. 6, 2011 by Trumbley to Strausbaugh saying "mmmm love baby pussy, wanna dig my face in and slurp it." (App.43(a), 126(a)) The Government contends Strausbaugh created the photo and distributed it to Trumbley specifically to elicit a sexual response in the hope that it would induce Trumbley to give nude photographs he possessed to Strausbaugh in return. First, there is absolutely no evidence presented to suggest the photo was produced specifically to elicit a sexual response in the viewer, considering the photo was produced 39 days prior to Trumbley receiving it.

Further, to claim the photo was distributed to elicit a sexual response in the viewer is unfounded since it is Trumbley that makes the sexual response and Strausbaugh that only suggests "nudity" and "personal pictures". United States v. Larkin (2010 CA3 PA) 629 F.3d 177 provides that "child porn is not created when a pedophile derives sexual enjoyment from an otherwise innocent photo. Private fantasies are not within the statute's ambit." (Citing United States v. Wiegand, 812 F.2d 1239, 1245 <9th Cir. 1987>) "A picture does not constitute child porn even though it displays nudity; it does not become child porn because it is placed in the hands of a pedophile." Faloona v. Hustler Magazine, Inc., 607 F.Supp. 134 (N.D.Tex.1995) However, as the record indicates the 4th email "response from Trumbley" is the last email and there was no response by Strausbaugh to indicate his desire to participate in Trumbley's sick fantasies, thus the requirements of Dost Factor 1,2,3,4, & 6 are not met and the Canada photo

(Pict0321) does not meet Title 18 2256(2) sexually explicit
conduct under Title 18 2256(2)(E) lascivious exhibition.

(ii) United States v. Kemmerling (2002 CA8 Iowa) 283 F.3d 644
"More than mere nudity is required before an image can qualify
as lascivious" within the meaning of § 2256(2)(E). A picture
is "lascivious" only if it is sexual in nature, therefore the
Canada photo does not qualify as child pornography under 18
USC § 2256(8). Thus, the Government's contention that the
Dost factors warranted probable cause is unjustified, as
demonstrated in IV below.

### IV FOURTH AMENDMENT AND PROBABLE CAUSE

Based on the Government's demonstration of the Dost
Factors, the Government contends that probable cause existed
to issue a warrant. (See Government's Brief at Pg:35) However,
those contentions are as well based on misrepresentation as
follows:

a.) Magistrate's determination vs. Officer's beliefs

As the Government concedes and admits that, in submitting
Corricelli's affidavit of probable cause, he did not submit a
copy of the Canada photograph for review of the Court. Thus,
Corricelli misrepresented this photo stating "the clear focus
of the image is on her vaginal area." Government Brief Pg:35 -
Pg:36 versus the actual photo of an infant's full body photo
and what appears to be having a diaper changed. Aguilar v.
Texas 37 US 108, 9 L.Ed. 1017 (1964) explains that "The point
of the Fourth Amendment prohibiting unreasonable search and
seizure is not that it denies law enforcement the support that
the usual inferences which reasonable men draw from evidence;
rather, its protection consists in requiring that those

- 8 -

inferences be drawn by a natural and detached Magistrate instead of being judged by another officer engaged in ferreting out the crime." (Citing Jones v. United States 362 US 257, 270, 4 L.Ed. 697, 708, 80 S.Ct. 725, 78 ALR 2d. 233; Giordenello v. United States 357 US 480, 2 L.Ed. 1503, 78 S.Ct. 1245; Johnson v. United States 333 US 10, 14, 92 L.Ed. 436, 440, 68 S.Ct. 367) Aguilar is precisely the opposite of what Corricelli did in securing the warrant in this case. Corricelli being the officer ferreting out the crime should have presented the Canada photo which was in his possession for a natural and detached Magistrate to judge, as explained in Aguilar, supra. Thus, the warrant was issued upon the sworn allegation of Corricelli that he "believed" the Canada photo was child porn and the emails showed a purpose to trade illicit child pornography. (Government Brief Pg:36) In Nathanson v. United States 290 US 41, 78 L.Ed. 159, 54 S.Ct. 11 the Court announced the following rule: "Under the Fourth Amendment, a Magistrate may not properly issue a warrant to search a private dwelling unless he can find probable cause therefore from the facts or circumstances presented to him under oath or affirmation. Mere affirmation of belief or suspicion is not enough." Id., at 47, 78 L.Ed. at 162. Therefore, the issuance of the warrant in this case violates the Supreme Court precedent in Nathanson, supra. as Corricelli did not submit the Canada photo and as the Government conceded, the Magistrate relied on what Corricelli "believed", (Government Brief Pg:36) which is prohibited by Nathanson.

In light of Corricelli's "belief", prohibited by Nathanson, supra., Aguilar, supra., classifies Corricelli's

said "beliefs" as "officer's ferreting out crime" and
warranting suppression of all evidence obtained therefrom and
subsequent thereto. Aguilar. Id. at Note:10.

b.) Magistrate's observation of evidence

The Government relies on U.S. v. Miknevich, 638 F.3d 178
(3d.Cir.2011); and New York v. P.J.Video, Inc., 475 US 868,
874 (1986) to claim that Strausbaugh's Magistrate was not
required to review the "Canada" picture to determine probable
cause to issue a warrant. (Government Response at Pg:35)

In Miknevich (Mik), supra, an officer observed a file
name SHA1 that he knew to be child pornography, "which clearly
describes its content as under age children engaged in sexual
acts, and/or poses. Id., at 638 F.3d 185."

Mik, supra, he argued that a warrant did not establish
probable cause by file name and therefore invalid as probable
cause was not supported by the file's content.

The Third Circuit affirmed because Mik downloaded and
possessed a file known to contain sexually explicit child
pornography. Id.

In New York v. P.J. Video, Inc. supra, (P.J.) at Note:7,
the Supreme Court explains that probable cause exists for the
search and seizure of specified, allegedly obscene video
cassettes (videos), where the Magistrate is given enough
information in a law enforcement officer's affidavit
describing the content of the videos, to conclude fair
probability that the videos violate a state obscenity statute,
by appealing predominately to the prurient interests in sex,
by depicting various kinds of sexual conduct in a patently
offensive manner, and by lacking serious literary, artistic,

- 10 -

political, or scientific value, where (1) each affidavit
describes numerous acts of deviate sexual intercourse, (2) it
is reasonable for the Magistrate to believe that the
affidavits faithfully and accurately describe the substance of
each video as a whole and (3) the Magistrate may reasonably
conclude that the described, successive acts of deviate sexual
intercourse pervade each video.

As to element (3) of P.J., supra, - Mik, supra, (citing
P.J.) also stresses that "...sufficiently detailed description
of images -, satisfies the 4th Amendment probable cause
requirement,...but an insufficiently detailed or conclusory
description cannot." Id.

In this instant case, this Court deals with a set of
emails containing one picture - to a Canadian resident -
displaying a semi nude picture of a baby playing "peekaboo"
during diaper change, and identified as "personal pics" and
"nude pics" and not "successive acts of deviate sexual
intercourse" P.J., supra, or "descriptions of children engaged
in sexual acts or poses", Mik, supra.

The Canada picture was misrepresented to the Magistrate
by the Officer's affidavit, just as it is exaggerated to
involve several nonexistent poses before this Court, and
therefore insufficiently detailed and conclusory descriptions
prohibited by Mik, supra, P.J., supra, Aguilar, supra at
Note:10.

This Third Circuit has considered it better practice -
obviously when available - "for an applicant seeking a warrant
based on images of alleged child pornography to append the
images..." Mik, supra, citing, United States v. LaFortune, 520

- 11 -

F.3d. 50, 56 (1st Cir.2008)

In Mik, supra, and P.J., supra, no videos or images were available; yet, in Strausbaugh's case, a Canada picture was available, and nothing can excuse the agent Corricelli's deliberate misrepresentation to the Magistrate that the Canada picture's central focus was on a child's genitals, when the entire body from well over the head to the feet was included in the "original" Canada picture.

Not to exclude that the available original Canada picture should have been appended to the warrant for the Magistrate's determination, Mik, supra; but the Government twists Strausbaugh's thrust on this appeal that it is Agent Corricelli who abused the reputation of his "experience" as a law enforcement officer, and his expectation of professionalism and honesty as an officer, to misrepresent the Canada picture and deceive the Magistrate out of a warrant.

There can be no excuse for Agent Corricelli's such actions, nor can the Government claim there is no requirement that a Magistrate observe evidence to cover or condone Corricelli's actions, when this Third Circuit classified it "better practice" to have "appended" the original Canada picture to his affidavit. Mik, supra. Relief should be granted to dismiss with prejudice as "fruit of the poisonous tree", results from Corricelli's misrepresentation of the Canada picture, and not the Magistrate's actions.

c.)  Good Faith Exception

As to the Government's contention that officer Corricelli's actions meet the Good Faith exception, which in general, excuses an officer's search under good faith, created

- 12 -

by the Court issuing the warrant under probable cause.

Using the "4-corner" analysis used by this Court in US v. Jones 994 F.2d 1051, 28 V.I. 375 (3d.Cir.1983). Appellant has established above, and the Government has conceded, that the Magistrate in this case did not view the available "Canada" picture as would be required by Aguilar v. Texas 37 US 108, 9 L.Ed. 1017 (1964) Note:6.

Instead, (1) the Magistrate issued the warrant based on a deliberate or recklessly false affidavit where Corricelli misrepresented that the "Canada" picture's central focus is on the vaginal area, when, as the Government concedes in their Response - when needed - the central focus was on the entire body from head to toe; and

(2), the Magistrate issued the warrant based on Corricelli's recklessly false affidavit and therefore being unaware of the totality of the circumstances existent in the entire "Canada" picture.

These are two of four elements [1, and 3] of Franks v. Delaware, 438 US 154, 155-56, 171-72 (1978) where the Supreme Court has demonstrated that the Good Faith Exception does not apply.

Thus, Corricelli's actions go far beyond the prohibited "Beliefs" or "Assumptions" of an officer, Nathanson v. US 290 US 41, 78 L.Ed. 159, 54 S.Ct. 11 at 162. But deliberate deception of Corricelli - ferreting out the alleged crime - Franks, supra at element (1) and prohibited actions of Corricelli that "poisons" all evidence subsequent or direct therefrom, from any trial or sustaining a conviction, Aguilar, supra at Note:10; and U.S. Constitution Amendment 4 & 5.

- 13 -

## V. INSUFFICIENT EVIDENCE/ACQUITTAL

First and foremost in the Government Brief Pg:49 - Pg:50 the Government claims that the 2 arguments for insufficiency of the evidence (Motion for Acquittal) should be reviewed under plain error because Strausbaugh did not raise them before the District Court.

a.) Ends of Interstate Commerce Character

First the Government conceded to Argument 2 being raised, whether there was sufficient evidence of an interstate nexus. Trial Attorney West, at the end of day one, moved for a Motion for Acquittal on the ground, the camera was made in Korea "seems to be the Government's reliance". (Pg:363(a)) It should be noted that the Government merely assumes jurisdiction and never presents any case law as to jurisdiction of materials that previously traveled in interstate commerce. This issue will be addressed in full below in paragraph VII. Second would be Argument 1 as the Government contends that at no time did Strausbaugh argue that the picture sent to Canada could not be considered child pornography. For this argument Strausbaugh points to the trial transcripts, the end of day two (App.588(a) - 590(a)) where Trial Counsel (West) not only reiterates interstate commerce on "something used in this process traveled in interstate commerce, in this case a camera that was purchased long before these pictures were taken came to rest here in Pennsylvania and it was used months, maybe years, after purchased to take these photographs, and I want to preserve the legal argument." In United States v. Freeman 239 US 117, 60 L.Ed. 172, 36 S.Ct. 32 (1915) the Supreme Court explained; "As usually understood, to ship a package from...a

- 14 -

foreign country into a state, is to accomplish its
transportation from one into another by common carrier, and is
essentially a continuing act whose performance is begun when
package is delivered to carrier, and is completed when it
reaches its destination." Even more specific, the Supreme
Court in Texas v. Anderson Clayton & Co., 302 US 747, 82 L.Ed.
578, 58 S.Ct. 265 decided it fact that "If shipment comes to
rest within state of origin and goods are thereafter disposed
of locally interstate character of shipment is lost." Also,
Anderson v. Shipowner's Association, 272 US 359, 362 71 L.Ed.
298, 302, 47 S.Ct. 125, commerce ends once materials reach
state of destination; United States v. Employing Plasterer 98
L.Ed. 618, 347 US 186 (same, commerce ends upon destination).
Therefore, in this instant case, a camera made in Korea and
sold here in Pennsylvania has lost its interstate character,
Freeman, supra. Thus, the Government does not retain
jurisdiction of the camera since commerce ends when the camera
reached its destination in Pennsylvania. Anderson v. Shipowner
's Association and United States v. Employing Plasterers,
supra. Considering the above a camera traveling from Korea
has no nexus to interstate commerce once it comes to rest in
state of destination and therefore this evidence is
insufficient and does not satisfy the elements of the crime.

b.)  Pictorial evidence preserved for appellate review

     As to the Canada photo not being child porn, Trial
Counsel (West) on day Two states "I wanted to preserve those
for appeal, and I would point out that with the pictures, the
pictures themselves have to be child pornography. It's not the
backstory that comes around the picture as to why they were

- 15 -

made. You can't take...a picture of your grandchild bathing in
the tub and make it child pornography because somebody else
treats it that way." (App.589(a) Ln:11-Ln:19) "I do think the
pictures, looking at them have to qualify" (App.590(a) Ln:2-4)
"You have to be able to...say that it's child pornography in
order for it to be a crime, to present it" (App. 590(a) Ln:4-
7) Trial Counsel West also points out to the Court, "there is
a five or six part test that may apply to them" (App.590(a)
Ln:1-2) Also in the 1st day of trial on the Motion for
Acquittal, Counsel states "the five-part test in determining
whether photographs are obscene and do meet the standards."
(App. 362(a) Ln:11-13) Calling it to the Court's attention
because "I do believe there is a standard here, and some of
these photos, while we've heard testimony, I think the photo
has to stand in an of itself as child pornography, some of
these people would have in their family albums." However, West
did not specifically state the Canada photo, he did sufficient
ly argue the pictures as a whole should have been analyzed, as
Counsel West points the Court's attention to the Dost Factors.
Thus, there is a sufficient showing by the record as to
whether the District Court erred in denying Strausbaugh's
Motion for Judgment of Acquittal under insufficiency of the
evidence. Therefore, the Court should review these arguments
under plenary review. Let the record reflect that Appellate
Counsel refused to order and present pre-trial Motion, as this
record would reflect that in pre-trial Motion to suppress and
dismiss indictment trial counsel states that the Canada photo
"only" arguably meets the child pornography definition,
raising the question of the sufficiency of the Canada photo to

support the warrant or Strausbaugh's conviction. Also, in conjunction to the above Canada photo not being porn, the Government misstates and misrepresents the Canada photo in Footnote 4 (Government Brief Pg:50) stating "it stretches credibility to claim that this photograph - 'a close up of an infant's naked vaginal area - is the type of snapshot commonly put into a family photo." First the Government blatantly attempts to inflame their claim "a close up of an infant's naked vaginal area." It is clearly supported and conceded in the record that this Canada photo is a full body photo from her feet to her head. (Government Brief Pg:35-36) Thus, again the Government misrepresents the Canada photo by repeatedly and inappropriately attempting to direct the Court's attention to the vaginal area of this photo. When it in reality is a full photo of an infant from feet to head and thus the genitals being in the middle of the natural body, cannot be considered the central focus of this photo.

c.) Fictitious Evidence

The Government makes several grossly inaccurate and unsupported statements that they attempt to use to satisfy sufficiency of evidence as to interstate nexus.

(i) Distribution

First, "Strausbaugh admitted to...distributing child porn." (Government Brief Pg:52) This information was protected by the Kastigar letter signed during the divulging of this information, therefore it was inappropriate and plain error for the District Court to consider this information during trial, also it would be plain error for this Court to consider.

- 17 -

(ii) Uploading

Next the Government states "Strausbaugh admits
to...uploads to a website in hope of getting pictures in
return." (Citing App.206(a) - 207(a) Government Trial Exhibit
74(b)). Thus, again the Government makes bare allegation as
the citings of App.206(a) and 207(a) and Government Trial
Exhibition 74(b) nor any other record supports challenges the
potential interstate commerce connection with regards to his
distribution count, Strausbaugh admitted to emailing the
Canada photo, as well as uploading other images to other
websites in hopes of facilitating trades for images. (App
206(a) - 207(a), 392(a), 412(a) Government Trial Exhibit 74(b)
at Government Brief Pg:59-60) The Government attempts to use
the precedent of United States v. MacEwen, 445 F.3d. 237, 244
(3rd.Cir.2006). This attempt is completely frivolous, as
stated above the Government makes bare allegation in regard to
"uploading pictures to the websites" as all cited transcript
or record nor any other record, does not support this bare
allegation and is therefore completely false.

(iii) Canada email and photo

Further, the Government's use of the emailed photo to
Canada also fails as the photo is not child pornography, nor
was the email an attempt to trade illicit child pornography as
supported above in III g(i) & (ii). The Government states
"Indeed Strausbaugh's attorney as good as conceded that the
emailing of the photo to Canada could be a basis for finding
an interstate commerce nexus at trial. (App. 363(a) - 364(a)
at Government Brief Pg:60) Attorney West is asking the Court
for a Motion of Acquittal within the Government cited

- 18 -

transcript (App.363(a) - 364(a)), West is challenging
interstate nexus as to the camera coming from Korea, as the
Court does not rely on and shift its attention to the Canada
photo. When the Court asked "What do you call that?"
(App.364(a) Ln:3) West responds, "Yeah, that would be an
alternate...," (App. 364(a) Ln:4-5) As the Court cuts off Mr.
West with "that would be an alternate, okay." West is not
conceding that the Canada picture gives the Government
interstate commerce nexus, but it is rather attempting to
raise the fact that the Canada picture does not give the
Government interstate commerce nexus as an alternative
appellate issue preserved under Rule 29/Acquittal. For this
reason there is sufficient reason to question interstate
commerce nexus.

(iv) Government concedes insufficient evidence

On Pg:53 of the Government Brief, they concede that
Government Trial Exhibits 6-10, 13, 18 only arguably meet two
Dost factors, partial nudity and intent to generate sexual
response in the viewer. First as addressed above in III(f),
the 4th Dost factor would be present in every photo. As to the
intent to generate sexual response in the viewer, this was
also addressed in III(g) above under Factor 6. The Government
also states "sending some of them to other people via email
and uploading to a website" (App.206(a) - 207(a) Government
Trial Exhibit 74(b)). This issue was also addressed above in
V(c) (ii & iii), and is not supported by the Government citing
or any of the record. Therefore potentially calling for a
vacature of some of the charges as these photos are not child
pornography and "does not become child porn because it is

placed in the hands of a pedophile, or in a forum where
pedophiles might enjoy it." Faloona v. Hustler Magazine Inc.,
supra. Also Larkin, supra, further provides that "child porn
is not created when a pedophile derives sexual enjoyment from
an otherwise innocent photo. (Citing United States v. Wiegand
812 F.2d. 1239, 1245 <9th Cir.1987>) Therefore the claims that
Strausbaugh admitted to masturbating to his photos also
fails.

## VI. INAPPROPRIATE CONSIDERATION OF EVIDENCE

The Government further attempts to prejudice this Court
"with regard to the possession charge Strausbaugh was
convicted of, the Government produced additional pictures and
a single video seized from the Strausbaughs' home that depicts
child pornography".

(a)   Video; Excluded Trial Exhibit - 61

First, Strausbaugh will address the "single video". This
video came from the blue hard drive as established in the
trial record (App. 247(a) Ln:1). This evidence (blue hard
drive) is in question as the Government presented to Trial
Attorney West, that it was seized from a safety deposit box
that was Josh Nace's, after they issued the supercedent
indictment. At trial the Government claims a 15 year old girl
took it from Strausbaugh's office, and placed it into a truck
that Josh Nace was in control of, that was once Strausbaugh's
as explained in I(b) above.

(b)   Photos: Excluded Trial Exhibits 62-72

Also, to further demonstrate, Trial Attorney West
objected to the Government Exhibit 61-72 being introduced into
Strausbaugh's trial as these exhibits were not covered by the

- 20 -

indictment. The Judge did not allow the Government to present
Exhibits 61-72 on the record and only let the Government
establish where they were located. The Government never
countered this objection. Therefore Government Exhibit 61-72
should not be allowed to prejudice this Court as Strausbaugh
was not charged with possession of these exhibits (App. 245(a)
Ln:23-24)

(c)  Exhibits 61-72 not charged in indictment

      According to Strausbaugh's supercedent indictment
(App.63(a)) Count III (Possession of Child Pornography),
Strausbaugh was only charged with possession stating "on or
before December 28, 2010 through March 18, 2011 within the
Middle District of Pennsylvania". If the Government was
charging Strausbaugh with any and all child porn discovered
during the subsequent seizure of the blue hard drive, they
would not have charged Strausbaugh with the specific date
December 28, 2010 that in Count I of the indictment, charged
the specific date of December 28, 2010 for the Production of
Child Pornography, and carried this same language over to the
supercedent indictment, also carrying over Count III,
Possession, December 28, 2010 through March 18, 2011 the date
of Strausbaugh's arrest. The supercedent indictment also
charges two additional Production charges: Count IV on the
date of December 3, 2010 and Count V on August 21, 2010. This
would satisfy the language of "on or before December 28, 2010"
for Count III, Possession of Child Pornography. Therefore,
Government Exhibits 61-72 were not covered in Strausbaugh's
indictment, and is inappropriate evidence for consideration on
this appeal.

- 21 -

VII. INTERSTATE COMMERCE JURISDICTION

Government Brief Pg:58-59(B) Evidence of an Interstate
Nexus. The Government alleges Strausbaugh's argument fails on
the part of the Government to show that there was a nexus to
interstate commerce in his case as no sale or purchase took
place, thus there is no effect on interstate commerce. The
Government asserts that the test Strausbaugh seeks to apply is
the wrong one. Claiming the Government met its burden as to an
effect on interstate commerce in a number of different ways.

(a)  Government's contention

First, there was no dispute that the camera was
manufactured in Korea. The Government relies on 3rd and 2nd
Circuit case law's interstate jurisdictional "hook". To
satisfy this hook, material used in creation of the
pornography traveled in interstate commerce at some time. This
jurisdiction hook is based on child porn being a multi-billion
dollar industry as set out in United States v. Rodia 194 F.3d.
465 (3d.Cir.1999). As raised and preserved for appellate
review, Trial Attorney West questioned the Government reliance
on the Korean camera for interstate commerce. "I would like to
preserve this for the record, interstate commerce. I don't
believe it's adequately proven." (App. 363(a) at Ln:15-17)

(b)  Effects on Economic Market

For this argument, Strausbaugh will rely on the effect on
interstate commerce "test" set out by the Supreme Court in
Gonzales v. Raich 545 US 1, 125 S.Ct. 2195, 162 L.Ed.2d 1
(2005) and United States v. Lopez, 514 US 549, 115 S.Ct. 1624,
131 L.Ed.2d 626. Within these two cases, the Supreme Court set
out the effect on interstate commerce for economical in nature

- 22 -

versus materials that traveled in interstate commerce.

As argued at Strausbaugh's trial and in pre-trial motions, and incorporated herein, even if his actions violated said statutes, it did not in any way affect commerce so as to give the USA jurisdiction over this cause.

In United States v. Smith, 402 F.3d. 1303 (11th Cir.2005), Smith produced child pornography with a "camera" and "photo paper". The USA claimed that they had jurisdiction because the camera and photo paper had traveled in interstate commerce at one point in time. [i.e., the camera was made in Japan, and the photo paper was distributed out of New York, which traveled to Florida where Smith purchased them]

Smith contends that because it was purely "intrastate, non-commercial conduct", then his actions did not substantially affect commerce. Smith relied heavily on, United States v. Maxwell, 386 F.3d 1042 (11th Cir.2004) who had a like intrastate case - minus production - and contends that his [Maxwell] case too, was not commercial or economical because, (1) his charges entailed no transactions, (2) there was no consumption of goods or services, and (3) there was no necessary resort to the market place; thus, the point Smith [and myself] is trying to make.

The 11th Circuit agreed with Smith and Maxwell, and vacated their convictions, and the USA presented certiorari.

The Supreme Court in Maxwell, 542 US 801, 126 S.Ct. 321, 163 L.Ed.2d 29 (2005), and Smith, 545 US 1124, 125 S.Ct. 2929, 162 L.Ed.2d 863 (2005) remanded both cases back to the 11th Circuit for reconsideration in light of Gonzales v. Raich, 545 US 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005).

Gonzales, supra, was complaining that the Controlled
Substance Act prevented him from growing his own medical
marijuana for personal use, which growing, possessing, and
obtaining marijuana for personal medical use is "legal" in the
state of California, etc.

Because California has "legalized" the production,
possession and sales of medical marijuana, so as to "market"
marijuana in
California dispensaries, the Supreme Court in Gonzales holds
that the Federal Government can in fact regulate the personal
growth and consumption of medical marijuana, because it
affects the "Legal Commercial Market" of the state of
California.

The Supreme Court, in making this determination relied on
the case of Wickard v. Filburn, 317 US 111, 63 S.Ct. 82, 87
L.Ed. 122 (1942), in which the Supreme Court determined that
because Wickard [a wheat farmer] grew 20 acres of wheat,
produced 11 acres for commercial market sales and kept 9 acres
for personal consumption, the Federal Government could
actually regulate the amount of wheat Wickard could grow so
that the Government could control the market through supply
and demand.

Gonzales', supra, demonstration to the Supreme Court
relied heavily on United States v. Lopez, 514 US 549, 115
S.Ct. 1624, 131 L.Ed.2d 626, and Morrison v. United States,
529 US 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), which the
Supreme Court held that the laws at issue in Lopez, and
Morrison, had nothing to do with "commerce" or any sort of
economic enterprise, unlike Gonzales where the Controlled

Substance Act [an act making marijuana legal under federal law] regulates typical economic activities, the production, distribution, and consumption of commodities for which there is an "established and lucrative interstate market". The Supreme Court further comments, "Prohibiting the intrastate possession of marijuana of an 'Article of Commerce' is a rational means of regulating commerce in that product." Id.

Here, in this instant case, like Smith and Maxwell, supra, the laws at issue, Title 18 USC § 2251, § 2252A & § 2252 [i.e. Child Pornography] have nothing to do with "commerce" or any sort of economic enterprise; as the Supreme Court points out in Gonzales, supra, through Lopez, supra and Morrison, supra.

Lopez, an 18 year old high school student, dealt with a gun within the school zone, a violation of then existing federal statute. The Supreme Court abolished that federal statute regarding gun possession in a school zone and found that such activities had "insufficient effects on interstate commerce" and emphasized, "the non-economic nature of the regulated conduct...has nothing to do with commerce or any sort of economic enterprise..."

The Supreme Court in Lopez, supra, rejected the USA's contention that the gun law was valid Commerce Clause Legislation because guns near schools affect the safety and social well being of society, as this logic would allow the Government to prosecute with no limits, and the legislature to pile inference upon inference to obtain general police power over the states.

In Morrison, the Supreme Court also abolished the

"Violence Against Women Act", finding the same insufficient effect on interstate commerce that had nothing to do with any sort of economic enterprise.

The point that Gonzales, supra, clearly makes, is that like, Wickard's, supra, wheat, Gonzales' marijuana is substantially affecting commerce and economics because there are "legal markets" for which the Government seeks to control supply and demand.

In this instant cause, like Smith, Maxwell, supra, etc., child pornography, Ibid, is not a "legal market" involving economics at all, and like Lopez and Morrison, supra, the Article 1, § 8, Clause 3 of the Constitution does not permit the Government to control "intrastate" or "interstate" child pornography that does not involve economics nature.

Giving the USA the benefit, United States v. Rodia, 194 F.3d 465 (3rd.Cir.1999), a controlling child pornography case, holds that child pornography is "regulatable" because child pornography is a "multi-billion dollar industry". Thus, Congress' language in justifying the regulation of child pornography, see, Effective Child Pornography Prosecution Act, Oct. 8, 2008, P.L. 110-358, Title 1, § 102, 122, Stat. 4001, ¶ (1) [hereinafter, Child Porn Act]

Child pornography, in no way is a multi-billion dollar industry, which as an industry would be a "large scale business activity".

"Purchasing" child pornography [which would be economic in nature] could be done by subscribing to an online website, or what is known as the "World Wide Web", which started from the birth of the Internet in the 1980's and is highly uncommon

to date, because as so much child porn has been distributed
and posted on the Internet over the years, all one has to do
[ever since the Child Porn Act was enacted] is click on to the
Internet and pick your flavor of child and adult porn, "for
free". [As Congress' Child Porn Act points out at ¶ (4)]

By the time the Child Porn Act came out in 2008, you
could actually search for the word "diesel" [engines], or any
other innocent word, and millions of child porn images pop up
that you can download for free, however, if you try to delete
such from your files, the accidental child porn images are
forever stuck on your computer hard drive.

Thus, the multi-billion dollar child porn industry
justification, is merely the "inferences" the Supreme Court
refers to in Lopez, supra, that Legislature uses to police
intrastate child porn, which the Government uses to prosecute
to no limit, contrary to their authority to do so pursuant to
Article 1, § 8, Clause 3 of the Constitution as this type of
child pornography, Ibid, is non-economic in nature, and
therefore has nothing to do with commerce. Lopez, Morrison,
supra.

Congress themselves have vested in the Supreme Court to
establish the rules for the District and Appellate Courts,
which if said rules are found to infringe upon the
Constitution, that rule must be abolished. [Title 28 USC §
2072]. Thus, consistent with the Ninth Amendment of the United
States Constitution, which prohibits construing the
Constitution where it will deprive one of any right provided
by the Constitution.

Congress' above demonstrated "multi-billion dollar

industry" justification to allow Government to police child pornography at will, exceeds the scope of the provisions [and their prosecuting power] of Article 1, § 8, Clause 3 of the Constitution to prosecute only for criminal activity which affects the economy, and therefore violates the Constitution. See Lopez, Morrison, supra.

The USA knowing their limits, herefore holds Strausbaugh to, "answer for a capitol or otherwise infamous crime"...and "deprives him of his life, liberty and property without due process of the law" or otherwise jurisdiction, and hereby infringing on his Fifth Amendment right, by exceeding their power under the Constitution, as this type of child porn in this case [Ibid] is non-economic, non-commercial, and entirely free. The "non-economic" child pornography statutes, [i.e. 18 USC § 2251, § 2252, & § 2252A. ], do not have anything to do with commerce and must be abolished, Lopez, Morrison, supra.

(c)   Items that traveled in interstate commerce at one point in time

In this instant case, "Canada picture & email[s]" or "computer and camera" with the "traveled in interstate commerce" concept, again is moot, as (1) it has been shown that the picture and email[s] did not violate any laws, (2) Strausbaugh's communications with Canada, using the email and picture, was not publicly available, but private and password protected, and did not fall within "criminal activity".

In United States v. Alkhabaz, 104 F.3d 1492 (6th Cir.1997) it was held that the transmission of email messages posted on an interactive news group describing the torture, rape and murder of a young woman who shared the name of one of

the defendant's classmates, did not fall within the Federal
Statute of 18 USC § 875(c), which prohibits interstate
communications containing threats to kidnap or injure another
person, because the emails were sent in an attempt to foster a
friendship based on shared sexual fantasies, rather than
communications containing a threat to kidnap or injure a
person.

In this instant case, Strausbaugh merely indulged in a
less than 2 minute overall correspondence to "ignite" a
friendship through email to swap private pictures of children
- who happened to be nude - acting silly, and the emails did
not suggest, or encourage the crime of child pornography, or
any other crime, and (3) in no way resulted in or affected
commerce or economy, Lopez, Morrison, supra.

The USA's claim that Strausbaugh's camera and computer,
or anything else "traveled in interstate commerce at one point
in time" gives them jurisdiction, is thus absurd, and must as
well fail as moot.

In United States v. Freeman, 239 US 117, 60 L.Ed. 172, 36
S.Ct. 32, (1915) the Supreme Court explained, "As usually
understood, to ship package from one state into another or
from a foreign country into a state, is to accomplish its
transportation from one into another by common carrier, and is
essentially a continuing act whose performance is begun when
package is delivered to carrier, and is completed when it
reaches its destination."

Even more specific, the Supreme Court in Anderson Clayton
& Co., supra, at 302 US 747, decided it fact that "if shipment
comes to rest within state of origin and goods are thereafter

- 29 -

disposed of locally, interstate character of shipment is lost, but temporary stoppage within another state, made necessary in furtherance of interstate carriage, does not change its character." See also, Anderson v. Shipowners Assn., supra, at 272 US 359, (same commerce ends once materials reach state of destination.), United States v. Employing Plasterers, supra, at 98 L.Ed. 618 (same, commerce ends upon destination.) Like cases are replete throughout the texts of jurisdprudence, supporting this issue.

Strausbaugh's camera and computer, etc., were purchased by him from the market in the state where he resided. As explained by the Supreme Court in Texas v. Anderson Clayton & Co., supra, the Government's power to regulate Strausbaugh's camera and computer, etc., in any way ended when those items were delivered to the market destination to be locally sold in his state. Further, when Strausbaugh purchased those items, Federal and State interest therein ended.

To say that the USA actually has such an interest in something that has "traveled in interstate commerce at one point in time", would be to say that receiving a speeding ticket is a federal offense because your vehicle has traveled in interstate commerce at one point in time, and, that stealing a piece of bubble gum from a store, or stealing a roll of toilet paper from a McDonald's bathroom is a Federal offense because they had traveled in interstate commerce at one point in time. Even the Supreme Court in Lopez, supra, renders firearm possession not affecting commerce at or economics, even though it had traveled in interstate commerce at one point in time. Commerce simply ended.

This instant case, like Lopez, Morrison, Smith and
Maxwell, supra, clearly had nothing to do with "commerce" or
any sort of existing "economic enterprise", and not only must
the existing non-economical child pornography statutes, [18
USC § 2251, § 2252, & § 2252(a)] be abolished, but
Strausbaugh's conviction must be vacated as the USA does not
have lawful or Constitutional jurisdiction so as to sustain a
conviction against him.

(d)   Non-existent uploading evidence by Government

The second argument the Government made to meet its
burden as to an affect on interstate commerce is the potential
connection with regards to Strausbaugh's distribution count.
(Government Brief Pg:59) Here the Government improperly claims
and cites (App.206(a), 207(a), 392(a), 412(a) and Government
Trial Exhibit 74(b)) claiming that Strausbaugh admitted to
uploading images to other "websites" in hopes of facilitating
trades for images. These allegations and citations of the
record cannot support uploading images as there was never any
admission nor evidence presented during trial or within the
complete record. Therefore, the Government reliance on the
holding in United States v. MacEwen 445, F.3d 237, 249 (3rd.
Cir. 2009) is moot.

(e)   Non-illicit Canada photo

Finally, the Government states Strausbaugh's attorney as
good as concedes that the emailing of the photo to Canada
could be a basis for finding an interstate commerce nexus at
Trial App.363(a) - 364(a). (Government Brief Pg:60) As
addressed in V(c)(iii) above, Attorney West was challenging
interstate nexus as to the camera, as the Court did not rely

on and shifted its attention to the Canada photo as does the Government in their Brief Pg:60. Again, the Court cuts off Mr. West, therefore, West was not conceding to the Canada photo giving the Government interstate commerce nexus. Also, it is worth stating that the Canada photo does not meet the definition of child pornography under Title 18 USC § 2256(8) as established in III(g)(ii) above.

For these reasons, there was insufficient evidence for a connection to interstate commerce, and cannot uphold the conviction of any charge.

### VIII. CRUEL AND UNUSUAL PUNISHMENT

(a)   Goverment Brief Pg:63, the Government states that Strausbaugh's sentence of 45 years is roughly 21% of the potential maximum and less than half the statutory minimum to justify that Strausbaugh's sentence does not constitute cruel and unusual punishment. However, the Government figures are on the reliance of minimums and maximums faced, shown in Government Brief Pg:62. For the Government to rely on the stated figures for each charged offense in concluding these figures, is completely frivolous as these minimum and maximum figures stated on Government Brief Pg:62 rely on the convicted one having one prior relating to sexual exploitation of a minor. In this instant case, the Government relied on Strausbaugh's misdemeanor offense of indecent assault of 2008 stemming from an offense Strausbaugh committed as a minor in 1992 at the age of 12. The Government's reliance on this charge as a prior, relating to, was challenged in the sentencing memorandum (App.18(a)) In the case of the United States v. Galo, 239 F.3d 572 (3rd.Cir.2001) the Third Circuit

held that Pennsylvania indecent assault statute as issue in this case is not a state law relating to the sexual exploitation of children for the purpose of invoking the pornography statute. At sentencing the District Court ruled in Strausbaugh's favor in light of Galo, supra, lowering all statutory minimums and maximums. Thus, these figures the Government relies on in pages 62 & 63 cannot be considered for the purpose of determining if Strausbaugh's sentence is cruel and unusual.

(b) Proportionality

Within the Government Brief Pg:63-64, Strausbaugh cites in support of his argument two cases, United States v. Kane 470 F.3d 1277 (8th.Cir.2006) and United States v. Irey 612 F.3d 1160 (11th.Cir.2012). The Government claims this is irrelevant in determining proportionality of a sentence as stated in Appellant's Brief Pg:23 citing Graham v. Florida 130 S.Ct. 2011, 2021 (2010).

First, it should be noted that the Government circumvents Strausbaugh's reliance on Mr. Champion's actions in United States v. Kane, supra. Champion was sentenced to only 12 years for the rape of Kane's 9 year old daughter over 200 times. He received only a quarter of the sentence Strausbaugh received, whose crimes were criminal photography. (Appellant's Brief Pg:24)

The second case, Irey, supra, the Government misrepresents Irey as being a less severe case as he only has one conviction of a different charge, however, the Government concedes he was convicted of § 2251, the exact same statute Strausbaugh was convicted of, only Strausbaugh has 3

- 33 -

convictions of § 2251 with only one victim who was not
physically harmed. In Irey's case, the Government chose to
charge him with one count of production even though the fact
of Irey's case proved that he had raped, sodomized and
sexually tortured fifty or more little girls as young as four
years old for a period of 5 to 6 years. It is worth restating
Appellant's Brief Pg:24 that Irey scripted, cast, starred in,,
produced, and distributed worldwide some of the most graphic
and disturbing child pornography the world has ever seen.
However, he could only be sentenced to a 30 year statutory
max. Thus he received 2/3 of the sentence received for a much
less heinous crime.

In this instant case Strausbaugh produced photos of one
individual who was not tortured or otherwise raped and
received 45 years. It should also be noted that Strausbaugh's
co-defendant (wife) was also convicted of 3 counts of
production of child pornography and only received 15 years,
1/3 of the sentence Strausbaugh received, showing a
significant proportionality problem that is cruel and unusual
punishment considering the facts of his case.

For these reasons, Strausbaugh's 45 year sentence should
be vacated.

### IX. MUTUAL LEGAL ASSISTANCE TREATY

### BETWEEN CANADA AND THE UNITED STATES

The Government's Brief at Pg:23 - Pg:25, contains two
general allegations in rebuttal to Strausbaugh's brief at Pg:7
- Pg:8, regarding the Mutual Legal Assistance Treaty (MLAT)
violations between the United States and Canada.

a.)   The MLAT argument is not to Suppress Evidence.

The Government contends that Strausbaugh attempts to use the MLAT to suppress evidence. (Government's Reply Brief at Pg:23,24)

Strausbaugh respectfully disagrees with this contention as no where in his MLAT argument (Ground I, at Pg:7 & 8) does Strausbaugh mention the "suppression of evidence".

Throughout the entire argument and presentation, Strausbaugh merely demonstrates that the Canada picture and emails, were not "fruit of criminal activity" pursuant to Canada Criminal Code, which would require the picture [original=PICT0321] to be a child engaged in sexual activity, and/or the emails to describe as such.

This record will reflect, that the Canada picture was not produced pursuant to the request of the United States, but at the offer of Canada authorities.

It is well settled that a Treaty must be construed according to its "ordinary meaning", Article 31.1 of the Vienna Convention on the Law of Treaties. 115 UNTS 331, TS NO. 58 (1980), see, Sale v. Haitian Centers Counsel (Haiti) 125 L.Ed.2d 128, 509 US 155, 191 (1993).

The MLAT language provides specifically, that it is used by, i.e., Canada and U.S. authorities, to conduct an investigation of criminal activity.

At the time prior to the Canada picture, PICT 0321, there was no investigation against Strausbaugh or a U.S. citizen in progress of any sort. Canadian authorities arrested a Canadian resident who had committed offenses which Strausbaugh was unaware of. Canada picture [PICT 0321] was provided to the U.S. authorities as "criminal activity" that Canada did not

consider as criminal activity, which is why Strausbaugh was
not sought to face Canadian charges, nor was the Canadian
resident sought by the U.S., or charged with "possession" of
child pornography based on PICT 0321, by the Canadian
authorities.

Based on these facts, Strausbaugh's complaint in Ground I
of his Brief [at Pg:7 & 8] stands unrefutable that the MLAT
was in fact abused and otherwise violated, as MLAT was used
for purposes other than purpose of investigating criminal
activity.

"It is axiomatic that a Treaty's plain language must
control absent 'extraordinary strong contrary evidence'",
Haiti supra, [509 US 194] citing Sumitomo Shoji America, Inc.
v. Avagliano, 457 US 176, 185, 72 L.Ed.2d 765, 102 S.Ct. 2374
(1982). See also United States v. Stuart, 489 US 353, 371,
103 L.Ed.2d 388, 109 S.Ct. 1183 (Scalia J., concurring in
Judgment) id. at 307, 103 L.Ed.2d 388, 109 S.Ct. 1183,
(Kennedy J. concurring in part and concurring in Judgment.)
Reliance on a treaty's negotiating history is disfavored
alternative of last, appropriate only where terms of the
document are obscure or lead to "Manifest absurd or
unreasonable" results. See Vienna Contention on the Law of
Treaties, Article 32, 115 UNTS at 340, 8 ILM, at 692. Haiti,
supra, at 509 US 194.

To support this as fact, the Canadian authorities -
because PICT 0321 was not child pornography under Canada
Criminal Code - made an assumption that it may be criminal
activity elsewhere, which is prohibited conduct in the United
States; see Nathanson, supra, at [78 L.Ed. 159], and Aguilar,

investigate criminal activity, which was like Cordero and
Reed, not the like the facts and events in Strausbaugh's
case.

The U.S. Supreme Court in Zicherman v. Korean Airlines
Co., 133 L.Ed.2d 596, 516 US 217, 266 (1996) instructs in
Note:3, that "Because a treaty ratified by the United States
is not only the law of the land, Const. Art. II § 2, but also
an agreement among the sovereign powers, we have traditionally
considered as aids to this interpretation the negotiating and
drafting history and the post ratification understanding of
the contracting parties. Both of these sources confirm that
the compensable injury is to be determined by domestic law".

Therefore, giving Strausbaugh a right to challenge the
above, et seq, demonstrated violation of the Government's
unlawful possession of the MLAT, as the key element of use of
the treaty is to "assist in the investigation of a crime",
which was not defined in Canada picture PICT 0321, nor its
adjoining emails by Strausbaugh as "Fruits of Crime". Nor was
it requested by the United States as the Government
misrepresents in their Reply Brief at Pg:24.

Thus, the MLAT has been improperly used in this instant
case in violation of Strausbaugh's due process rights. Thereby
rendering such use is an infraction of the MLAT.

## X. CONCLUSION

1.) MLAT Infraction

As to the MLAT infraction, the use of the MLAT cannot be
used against Strausbaugh in this instant case.

2.) Warrants and Probable Cause

As to the warrant issued in this cause, there exists no

probable cause to pursue a warrant as the Canada picture is
moot to these proceedings, and would otherwise offend due
process of the law, as well as Strausbaugh's rights thereto.

3.)  Subsequent Evidence

As to subsequent evidence obtained in this case, probable
cause was based not only on misrepresentation to the
Magistrate as to the Canada picture, exaggerated assumptions,
but additionally on a picture obtained from Canada in blatant
violation of the MLAT.

4.)  Jurisdiction

(a)  Economic Market

As to jurisdiction, the Federal Courts do not have
jurisdiction pursuant to Article 1, § 8, Clause 3, to
prosecute this cause as Strausbaugh's actions did not affect
an economic market in any way.

(b)  Items That Had Traveled in Interstate Commerce

Strausbaugh's camera, etc., having traveled in interstate
commerce at one point in time does not invoke Federal
jurisdiction as the camera, etc., reached its destination in
Pennsylvania, [thereby ending Federal jurisdiction] and
purchased by Strausbaugh at Pennsylvania destination [thereby
property protected by the 4th Amendment].

(c)  Email Correspondence

As to Strausbaugh's personal correspondence with a
Canadian resident via email, there is no intent to commit a
crime of Canada or United States, and thus, otherwise
prohibited consideration due the MLAT infraction.

5.)  Insufficiency of the Evidence/Acquittal

(a)  As to the evidence in this cause, the Government has not

established jurisdiction of this cause, and as demonstrated above, cannot possibly make such an establishment.

(b)   The Canada picture - the Government's case in chief - does not meet the definitions of child pornography in that the child is in no way in, or posed as to be in, a sexual act. Even using the Dost factors, one would have to literally misrepresent the picture to qualify as child porn, as has occurred before the Court below, and again to this Honorable Court, only to include more than one pose and view of the Canada picture, that the actual Canada photo - in still form - only shows one natural and not obscene child.

(c)   Thus, due the MLAT infraction, this Canada picture should not be considered at all, even under "extraordinary circumstances", as the Canada picture is not what the Government insists.

(d)   The vast majority of the evidence at the trial was uncontested as a collection of evidence to report prior and current felonies, or excluded and simply, non-existent.

6.)   Cruel and Unusual Punishment

(a)   As to Strausbaugh's cruel and unusual punishment claim, the argument speaks for itself in favor of Strausbaugh. The Government is condoning actual forcible rape of a child over production and possession of photos of children; giving the rapists extremely lenient sentences, and the illicit child photographer or possessor thereof extremely harsh sentences up to hundreds of years.

(b)   Even as to Strausbaugh's co-defendant, "collecting evidence", received 30 years less that Strausbaugh.

XI. RELIEF

- 40 -

1.)   Based upon the above demonstration, to include
Strausbaugh's opening brief, Strausbaugh, according to the
law, Constitution, Treaties and Precedent, Strausbaugh is
entitled to the following relief:

2.)   That the inappropriate use of the MLAT be ordered an
infraction and its use stricken from any sort of consideration
in this cause.

3.)   That as there was no probable cause to issue a warrant,
as demonstrates by Strausbaugh in this appeal, that it be
ordered that good faith etc., exceptions do not apply due to
misrepresentation[s], and all evidence in relation to any
warrant, consent, interview, warrantless search, or etc., be
deemed fruit of the poisonous tree and excluded from
consideration of any state or federal charge, and therefore a
reversal to vacate with prejudice, is warranted;

4.)   That the United States is without jurisdiction of this
cause,and therefore a reversal to vacate with prejudice, is
warranted.

5.)   That, in the event that the relief is not granted; all
evidence in this cause is due to be established as
insufficient as to all but Count V; and

6.)   That, Strausbaugh be resentenced to substantially less
as no on was hurt, tortured, or traumatized by him.


Respectfully Submitted,
On this the 21 day of August, 2013


Michael Strausbaugh Reg.No.69878-067
United States Penitentiary, Tucson.

CERTIFICATE OF SERVICE

I do hereby certify under penalty of perjury pursuant
to Tilte 28 USC § 1746, that I have served a true copy of the
foregoing upon Chief Appellate Attorney Stephen R. Cerutti II,
for the Middle Distric of Pennsylvania, 228 Walnut St. Ste
220, Harrisburg, Pa. 17108, and an original copy of the same
to the United States Court of Appeals for the Third Circuit,
604 Market St. Philadelphia, Pa. 19106, Via , Certified Mail
Reciept No. 7012 3050 0001 1096 4032, by placing said in the
prison U.S. Legal Mail system, first class postage prepaid and
properly addressed.

On this the 21st day of August, 2013

Michael Strausbaugh Reg.No.69878-067
United States Penitentiary, Tucson
Post Office Box 24550
Tcson, Arizona.            85734